# Supreme Court of Florida

_____

No. SC14-2088
_____

**IN RE:  AMENDMENTS TO THE RULES REGULATING THE FLORIDA BAR (BIENNIAL PETITION).**

[June 11, 2015]

PER CURIAM.

This matter is before the Court on the petition of The Florida Bar proposing amendments to the Rules Regulating the Florida Bar (Bar Rules).  See R. Regulating Fla. Bar 1-12.1.  We have jurisdiction.  See art. V, § 15, Fla. Const.

The Bar's petition in this case proposes amendments to the following Bar Rules: 1-3.3 (Official Bar Name and Contact Information); 1-3.7 (Reinstatement to Membership); 3-5.1 (Types of Discipline; Generally); 3-5.2 (Emergency Suspension and Interim Probation or Interim Placement on the Inactive List for Incapacity not Related to Misconduct); 3-5.3 (Diversion of Disciplinary Cases to Practice and Professionalism Enhancement Programs); 3-7.10 (Reinstatement and Readmission Procedures); 4-1.6 (Confidentiality of Information); 4-1.17 (Sale of Law Practice); 4-5.3 (Responsibilities Regarding Nonlawyer Assistants); 5-1.1

(Trust Accounts); 5-1.2 (Trust Accounting Records and Procedures); 6-12.3 (Requirement); and 10-7.2 (Proceedings for Indirect Criminal Contempt). The proposals were approved by the Board of Governors, and formal notice of the proposed amendments was published in The Florida Bar News. The notice directed interested persons to file their comments directly with the Court. The Court did not receive any comments.

After fully considering the Bar's petition, we adopt most of the proposed rule amendments. However, as addressed in this opinion, we do not adopt portions of the proposed amendment to Bar Rule 3-5.1(h) (Types of Discipline; Generally; Notice to Clients), nor do we adopt the amendments to Bar Rule 5-1.2 (Trust Accounting Records and Procedures), subdivisions (d)(5) (Minimum Trust Accounting Procedures) and (g)(1) (Audits). Additionally, the Court, on its own motion, amends Bar Rule 3-7.9 (Consent Judgment). We discuss the more significant amendments in this case below.

First, in Bar Rule 3-5.1 (Types of Discipline; Generally), subdivision (e) (Suspension) is amended, as proposed by the Bar, to delete existing language in the rule providing that a lawyer may be suspended for an indefinite period of time, and to instead provide that a lawyer may be suspended for a specified period or until further order of this Court. Additionally, subdivision (h) (Notice to Clients) is amended to require a lawyer, upon being served with a notice of disbarment,

disbarment on consent, disciplinary revocation, suspension, emergency suspension, emergency probation, or placement on the inactive list for incapacity not related to misconduct, to provide a copy of the Court's order imposing the discipline on all state, federal, or administrative bars of which the respondent is a member. Subdivision (j) (Restitution) is amended to require a lawyer to provide the Bar with telephone numbers and current addresses for all individuals or entities to whom the lawyer is ordered to pay restitution.

The Bar also proposes amending Bar Rule 3-5.1(h) to provide that when a lawyer begins serving a required period of suspension before the issuance of an order from this Court approving the suspension, the lawyer must furnish a copy of the Court's order, or notice of commencement of the suspension, to all of the lawyer's clients, opposing and co-counsel, and all courts, tribunals, or adjudicative agencies before which the lawyer is counsel of record. The Bar's proposed amendment is made in response to the Court's decision in Florida Bar v. Townsend, 145 So. 3d 775 (Fla. 2014), where the respondent, acting pursuant to a consent judgment with the Bar, began and completed serving his full thirty-day suspension before the Court issued an order approving the suspension; because the "triggering" date in Bar Rule 3-5.1(h) for determining which clients, lawyers, and courts should be notified of the suspension was the date the respondent is served with the Court's order imposing the discipline, the respondent in Townsend was

- 3 -

not required to notify any clients, lawyers, or courts of the thirty-day suspension until after he completed serving it. After considering the Bar's proposal to amend Bar Rule 3-5.1(h) in order to address this issue, we decline to adopt the proposed amendment. Consent judgments between a respondent and the Bar are not final until this Court issues an order approving the judgment. See R. Regulating Fla. Bar 3-7.9(c). Accordingly, we conclude that a better practice in cases involving a conditional plea and consent judgment entered into between the Bar and a respondent is that the consent judgment may not permit the respondent to begin serving a period of suspension or disbarment until this Court issues an order approving the discipline. Thus, the Court, on its own motion, amends Bar Rule 3-7.9(d) (Consent Judgment; Content of Conditional Pleas) to prohibit this practice.

Next, Bar Rule 3-5.2 (Emergency Suspension and Interim Probation or Interim Placement on the Inactive List for Incapacity not Related to Misconduct), is amended, as proposed by the Bar, to outline new procedures authorizing referees to determine entitlement to, and to oversee disbursement of, funds frozen in a lawyer's trust account pursuant to an emergency suspension or interim probation order. These new procedures are described in several subdivisions. Subdivision (c) (Trust Accounts) will provide that, upon an order of emergency suspension or probation that restricts a lawyer's access to his or her trust account, Bar counsel will serve a copy of the order freezing the trust account on all banks where the

lawyer maintains a trust account. The suspension or probation order will serve as an injunction to prevent the bank from allowing further payments from the trust account except in accordance with restrictions imposed by the court through subsequent orders issued by a court-appointed referee. Additionally, new subdivision (c)(1) provides that the Court's order appointing a referee in a case involving an emergency suspension or probation may authorize the referee to determine entitlement to funds in a frozen trust account. Any client or third party requesting release of frozen funds must file a written petition with the referee, along with proof of entitlement to the funds. Under new subdivision (c)(2), Bar counsel and Bar auditors are also required to provide any information to the referee, collected during a Bar audit, identifying persons who may be entitled to trust account funds. Bar staff will then send written notice to each of these persons making them aware of their possible interest in the trust account money; the notice will include a copy of a form "Petition Requesting Release of Frozen Trust Account Funds," as well as instructions for completing the petition. The Bar will also publish a notice in the local newspaper informing the public that the lawyer's trust account has been frozen, and instructing those with possible claims on the funds to contact the Bar. In some circumstances, the referee will be authorized to appoint a receiver, paid from the corpus of the trust account funds, to determine those who are rightfully entitled to the money.

New subdivision (d) (Referee Review of Frozen Trust Account Petitions) of Bar Rule 3-5.2, provides that the referee, after reviewing the Bar's audit report, the trust account records, any petitions filed by interested persons, or any recommendations from an appointed receiver, will determine when and how to pay the claim of any person asserting an entitlement to funds in the frozen trust account. The referee may hold a hearing on the matter. Significantly, subchapter 3-7 (Procedures) will not apply to this proceeding—no pleadings will be filed, only petitions requesting release of trust account funds; the parties will be only those persons filing a petition requesting release of funds, and will not include the Bar; and the referee's order will be treated as a final order unless one of the parties petitions for review in this Court. The referee will determine the percentage of monies missing from the trust account and the amounts owed to the parties, and will implement a "pro rata distribution" of funds if there is not sufficient money in the account to pay all of the claims in full. The parties may file a petition for review within 60 days of the referee's final order.

New subdivision (e) (Separate Funds in Frozen Trust Accounts) of Bar Rule 3-5.2 is also adopted to direct the referee to order the return of any "separate funds" to the rightful owner of those funds. Separate funds are defined as monies deposited into the lawyer's trust account after the misappropriation took place, which are not affected by the misappropriation, and funds that have been placed

- 6 -

into a separate segregated individual trust account under the individual client's tax identification number.

Next, we amend Bar Rule 3-5.3 (Diversion of Disciplinary Cases to Practice and Professionalism Enhancement Programs) to provide that a lawyer is not eligible for diversion to a practice and professionalism enhancement program if he or she has been the subject of a prior diversionary program for the same type of rule violation within the past five years (rather than seven years). A lawyer who has been the subject of a prior diversion for one type of rule violation, and is alleged to have violated a completely different type of rule at least one year after the initial diversion, would be eligible to attend a diversionary program.

We make several amendments to Bar Rule 3-7.10 (Reinstatement and Readmission Procedures), as proposed by the Bar. The most notable of these is subdivision (b) (Petitions; Form and Contents), which is amended to provide that a petition for reinstatement to Bar membership may not be filed until the petitioner has completed at least 80 percent of his or her suspension. We also amend Bar Rule 3-7.10 to require: that a petition for reinstatement be filed with the Court in compliance with the filing requirements in the Florida Rules of Civil Procedure and the Florida Rules of Judicial Administration; and that a petition for reinstatement filed by a petitioner who has been ineligible to practice for more than five years, and who is consequently required to retake the Florida Bar Examination

and the Multistate Professional Responsibility Examination, must provide proof in the petition that the petitioner has passed both exams.

Bar Rule 4-1.6 (Confidentiality of Information) is amended to authorize a lawyer to reveal confidential information in order to detect and resolve conflicts of interest between lawyers in different firms, which may arise when lawyers change employment or change the composition or ownership of a firm, provided that the revealed information would not compromise the attorney-client privilege or prejudice the client. This amendment is consistent with recent changes to the American Bar Association's model rules. Rule 4-1.6 is also amended to provide that, as technology continues to evolve, lawyers must make reasonable efforts to prevent the inadvertent or unauthorized disclosure of confidential information relating to the representation of a client.

Bar Rule 5-1.1 (Trust Accounts) is amended to add new language authorizing a lawyer to deposit his or her own personal funds into the trust account to address a shortage in the account. However, any deposits made by the lawyer to cover trust account shortages must be no more than is needed to cover the shortage (and may be less). If a lawyer does deposit personal funds to cover a shortage, the lawyer must immediately notify the Bar's lawyer regulation department, and identify the cause of the shortage and the amount deposited into the account to cover it. This amendment is intended to encourage lawyers to take action to

identify and replenish shortages in their trust accounts (whether the shortage is caused by misappropriation or error) without risking further disciplinary action for commingling funds, and the Bar states that the rule is consistent with rules governing lawyer conduct in several other states. We emphasize, however, that the lawyer must immediately notify the Bar of any shortage in the trust account and any money deposited to correct the shortage, so that the Bar can investigate whether any ethical violations occurred and take the appropriate actions necessary to protect the public.

In Bar Rule 5-1.2 (Trust Accounting Records and Procedures), the Bar proposes amendments to subdivision (d)(5) (Minimum Trust Accounting Procedures), and a corresponding amendment to subdivision (g)(1) (Audits) to remove the current requirement that lawyers must file with the Bar every year a certificate of compliance with the trust accounting rules. The Bar indicates that a "significant minority" of Bar members currently do not file the yearly trust account certificates, and that this has led to inconsistent discipline for lawyers who engage in minor trust accounting violations—sometimes resulting in harsher discipline for lawyers who did submit a yearly trust account certificate than for those who did not. Nonetheless, we do not adopt these amendments to rule 5-1.2. We believe that the requirement that lawyers submit a yearly trust account certificate is an important and useful tool in ensuring that lawyers are aware of the trust accounting

requirements, and that they affirm their compliance with those requirements. Accordingly, we take this opportunity to make clear that, as required in Bar Rule 5-1.2(d)(5), every member of The Florida Bar must file each year a trust accounting certificate showing his or her compliance with the trust accounting rules. The failure to file the trust accounting certificate will result in the lawyer being deemed delinquent and ineligible to practice.

We do amend Bar Rule 5-1.2, subdivision (f) (Record Retention), as proposed by the Bar to state that, on the dissolution of a law firm or on the sale of a law practice, the partners or the seller of the practice shall make reasonable arrangements for the maintenance and retention of trust account records.

Finally, we amend Bar Rule 6-12.3 (Basic Skills Course Requirement Rule; Requirement), as proposed by the Bar, to remove the requirement that lawyers newly admitted to the practice of law must attend the Practicing with Professionalism program in person. Instead, the Young Lawyers Division of the Bar may develop a program to allow these newly-admitted lawyers to attend the course electronically.

Accordingly, the Court adopts the amendments to the Rules Regulating the Florida Bar as set forth in the appendix to this opinion. New language is indicated by underscoring; deletions are indicated by struck-through type. The comments are offered for explanation and guidance only and are not adopted as an official

part of the rules. The amendments shall become effective on October 1, 2015, at 12:01 a.m.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THESE AMENDMENTS.

Original Proceeding – Rules Regulating The Florida Bar

John F. Harkness, Jr., Executive Director, Gregory William Coleman, President, Mary Ellen Bateman, DEUP Division Director, and Elizabeth Clark Tarbert, Ethics Counsel, The Florida Bar, Tallahassee, Florida,

for Petitioner

**APPENDIX**

**RULE 1-3.3**     **OFFICIAL BAR NAME AND CONTACT INFORMATION**

(a)  **Designation.**  Each member of The Florida Bar ~~shall~~must designate an official bar name, mailing address, business telephone number, and business e-mail address~~, if the member has one~~.  If the physical location or street address is not the principal place of employment, the member must also provide an address for the principal place of employment.  The Florida Bar may excuse a bar member from the requirement of providing an e-mail address if the bar member has been excused by the court from e-service or the bar member demonstrates that the bar member has no e-mail account and lacks Internet service at the bar member's office.

(b)  **Changes.**  Each member ~~shall~~must promptly notify the executive director of any changes in any information required by this rule.  The official bar name of each member of The Florida Bar ~~shall~~must be used in the course of the member's practice of law.  Members may change their official bar name by sending a request to the Supreme Court of Florida.  The court must approve all official bar name changes.

**RULE 1-3.7**   **REINSTATEMENT TO MEMBERSHIP**

(a)  [No Change]

(b)  **Petitions Required**.  A member seeking reinstatement must file a petition with the executive director setting forth the reason for inactive status, retirement, or delinquency and showing good cause why the petition for reinstatement should be granted.  The petitioner must ~~be~~include all required information on a form approved by the board of governors ~~and the petitioner will furnish such information on such form as the board of governors may require~~.  The petition must be accompanied by a nonrefundable reinstatement fee of $150 and payment of all arrearages unless adjusted by the executive director with concurrence of the executive committee for good cause shown.  Inactive members are not required to pay the reinstatement fee.  No member will be reinstated if, from the petition or from investigation conducted, the petitioner is not of good moral character and morally fit to practice law or if the member is delinquent with the continuing legal education or basic skills course requirements.

If the executive director is in doubt as to approval of a petition the executive director may refer the petition to the board of governors for its action. Action of the executive director or board of governors denying a petition for reinstatement may be reviewed ~~up~~on petition to the Supreme Court of Florida.

**(c) Members Who Have Retired or Been Delinquent for Less Than 5 Years, But More Than 3 Years**. Members who have retired or been delinquent for less than 5 years, but more than 3 years, must ~~have~~ complete~~d~~ 10 hours of continuing legal education courses for each year or portion of a year that the member had retired or was deemed delinquent.

**(d) Members Who Have Retired or Been Delinquent for 5 Years or More.** Members who have retired or have been deemed delinquent for a period of 5 years or longer will not be reinstated under this rule and must be readmitted upon application to ~~and approval by~~ the Florida Board of Bar Examiners <u>and approval by the Supreme Court of Florida</u>.

**(e) [No Change]**

**(f) Members Delinquent 60 Days or Less.** Reinstatement from ~~membership fees~~ delinquency <u>for payment of membership fees or completion of continuing legal education or basic skills course requirements</u> ~~accomplished~~<u>approved</u> within 60 days from the date of delinquency ~~relates back to the date~~<u>is effective on the last business day</u> before the delinquency. Any member reinstated within the 60-day period is not subject to disciplinary sanction for practicing law in Florida during that time.

**(g) [No Change]**


**RULE 3-5.1 GENERALLY**

A judgment entered, finding a member of The Florida Bar guilty of misconduct, ~~shall~~<u>will</u> include ~~one~~<u>1</u> or more of the following disciplinary measures:

**(a) Admonishments.** A Supreme Court of Florida order finding minor misconduct and adjudging an admonishment may direct the respondent to appear before the Supreme Court of Florida, the board of governors, grievance committee, or the referee for administration of the admonishment. A grievance committee report and finding of minor misconduct or the board of governors, ~~up~~on review of

- 13 -

suchthe report, may direct the respondent to appear before the board of governors or the grievance committee for administration of the admonishment. A memorandum of administration of an admonishment shall thereafterwill be made a part of the record of the proceeding after the admonishment is administered.

**(b) Minor Misconduct.** Minor misconduct is the only type of misconduct for which an admonishment is an appropriate disciplinary sanction.

(1) *Criteria.* In the absence of unusual circumstances misconduct shallwill not be regarded as minor if any of the following conditions exist:

(A) – (F) [No Change]

(2) *Discretion of Grievance Committee.* Despite the presence of 1 or more of the criteria described in subdivision (1) above, aA grievance committee may recommend an admonishment for minor misconduct or diversion to a practice and professionalism enhancement program when unusual circumstances are present, despite the presence of 1 or more of the criteria described in subpart (1) of this rule. When the grievance committee recommends an admonishment for minor misconduct or diversion to a practice and professionalism enhancement program under suchthese circumstances, its report shallwill contain a detailed explanation of the circumstances giving rise to the committee's recommendation.

(3) *Recommendation of Minor Misconduct.* If a grievance committee finds the respondent guilty of minor misconduct or if the respondent shall admitsts guilt of minor misconduct and the committee concurs, the grievance committee shallwill file its report recommending an admonishment, the manner of administration, the taxing of costs, and an assessment or administrative fee in the amount of $1,250 against the respondent. The report recommending an admonishment shallwill be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect therein the report, or if the report is not referred to the disciplinary review committee by the designated reviewer [as provided in rule 3-7.5(b)], the report shallwill then be served on the respondent by bar counsel. The report and finding of minor misconduct shall becomes final unless rejected by the respondent within 15 days after service of the report. If rejected by the respondent, the report shallwill be referred to bar counsel and referee for trial on complaint of minor misconduct to be prepared by bar counsel as in the case of a finding of probable cause. If the report of minor misconduct is not rejected by the respondent, notice

- 14 -

of the finding of minor misconduct ~~shall~~will be given, in writing, to the complainant.

        (4)    *Rejection of Minor Misconduct Reports.* The rejection by the board of governors of a grievance committee report of minor misconduct, without dismissal of the case, or remand to the grievance committee, ~~shall be~~is deemed a finding of probable cause. The rejection of ~~such~~a report by a respondent ~~shall be~~is deemed a finding of probable cause for minor misconduct. ~~Upon~~At trial before a referee following rejection by a respondent of a report of minor misconduct, the referee may recommend any discipline authorized under these rules.

        (5)    *Admission of Minor Misconduct.* ~~Within 15 days after a finding of probable cause by a grievance committee, a~~A respondent may tender a written admission of minor misconduct to bar counsel or _to_ the grievance committee _within 15 days after a finding of probable cause by a grievance committee_. An admission of minor misconduct may be conditioned ~~up~~on acceptance by the grievance committee, but the respondent may not condition the admission of minor misconduct ~~up~~on the method of administration of the admonishment or ~~up~~on nonpayment of costs incurred in the proceedings. ~~Such a~~An admission may be tendered after a finding of probable cause (but before the filing of a complaint) only if ~~such~~an admission has not been previously tendered. If the admission is tendered after a finding of probable cause, the grievance committee may consider ~~such~~the admission without further evidentiary hearing and may either reject the admission, ~~thereby~~affirming its prior action, or accept the admission and issue its report of minor misconduct. If a respondent's admission is accepted by the grievance committee, the respondent may not ~~thereafter~~later reject a report of the committee recommending an admonishment for minor misconduct. If the admission of minor misconduct is rejected, ~~such~~the admission ~~shall~~may not be considered or used against the respondent in subsequent proceedings.

    **(c)  Probation.** The respondent may be placed on probation for a stated period of time of not less than 6 months nor more than 5 years or for an indefinite period determined by conditions stated in the order. The judgment ~~shall~~will state the conditions of the probation, which may include but are not limited to the following:

        (1) – (2)    [No Change]

        (3)    ~~the making of~~required report~~ing~~s to a designated agency;

(4)     ~~the~~ satisfactory completion of a course of study or a paper on legal ethics approved by the Supreme Court of Florida;

(5)     ~~such~~ supervision over fees and trust accounts as the court ~~may~~ direct<u>s</u>; or

(6)     [No Change]

The respondent will reimburse the bar for the costs of supervision.  ~~Upon failure of a respondent to comply with the conditions of the probation or a finding of probable cause as to conduct of the respondent committed during the period of probation, t~~<u>T</u>he respondent may be punished for contempt on petition by The Florida Bar, as provided elsewhere in these Rules Regulating The Florida Bar~~.~~<u>, on failure of a respondent to comply with the conditions of the probation or a finding of probable cause as to conduct of the respondent committed during the period of probation.</u>  An order of the court imposing sanctions for contempt under this rule may also terminate the probation previously imposed.

**(d)  Public Reprimand.**  A public reprimand ~~shall~~<u>will</u> be administered in the manner prescribed in the judgment but all ~~such~~ reprimands ~~shall~~<u>will</u> be reported in the Southern Reporter.  Due notice ~~shall~~<u>will</u> be given to the respondent of any proceeding set to administer the reprimand.  The respondent ~~shall~~<u>must</u> appear personally before the Supreme Court of Florida, the board of governors, any judge designated to administer the reprimand, or the referee, if required, and ~~such~~<u>this</u> appearance ~~shall~~<u>will</u> be made a part of the record of the proceeding.

**(e)  Suspension.**  The respondent may be suspended from the practice of law for a ~~definite~~ period of time ~~or an indefinite period thereafter~~ to be determined by the conditions imposed by the judgment<u> or order or until further order of the court</u>.  During ~~such~~<u>this</u> suspension the respondent ~~shall~~ continue<u>s</u> to be a member of The Florida Bar but without the privilege of practicing.  A suspension of 90 days or less ~~shall~~<u>does</u> not require proof of rehabilitation or passage of the Florida bar examination and the respondent ~~shall~~<u>will</u> become eligible for all privileges of members of The Florida Bar ~~up~~on the expiration of the period of suspension.  A suspension of more than 90 days ~~shall~~ require<u>s</u> proof of rehabilitation and may require passage of all or part of the Florida bar examination and the respondent ~~shall~~<u>will</u> not become eligible for all privileges of members of The Florida Bar until the court enters an order reinstating the respondent to membership in The Florida Bar.  No suspension ~~shall~~<u>will</u> be ordered for a specific period of time ~~in excess of~~<u>more than</u> 3 years.

~~Unless waived or modified by the court on motion of the respondent showing good cause, a~~<u>A</u>n order or opinion imposing a suspension of 90 days or less ~~shall~~<u>will</u> include a provision that prohibits the respondent from accepting new business from the date of the order or opinion until the end of the term of the suspension and ~~shall~~<u>will</u> provide that the suspension is effective 30 days from the date of the order or opinion so that the respondent may close out the practice of law and protect the interests of existing clients~~.~~<u>, unless the court orders otherwise.</u>

~~Unless waived or modified by the court on motion of the respondent showing good cause, a~~<u>A</u>n order or opinion imposing a suspension of more than 90 days ~~shall~~<u>will</u> include a provision that prohibits the respondent from accepting new business from the date of the order or opinion until the date of the court's order of reinstatement and ~~shall~~<u>will</u> provide that the suspension is effective 30 days from the date of the order or opinion so that the respondent may close out the practice of law and protect the interests of existing clients~~.~~<u>, unless the court orders otherwise.</u>

**(f)  Disbarment.**  A judgment of disbarment terminates the respondent's status as a member of the bar.  Permanent disbarment ~~shall~~ preclude<u>s</u> readmission. A former member who has not been permanently disbarred may only be admitted again ~~up~~on full compliance with the rules and regulations governing admission to the bar.  Except as ~~might be~~ otherwise provided in these rules, no application for readmission may be tendered within 5 years after the date of disbarment or ~~such~~<u>a</u> longer period ~~as~~<u>ordered by</u> the court ~~might determine~~ in the disbarment order ~~and thereafter~~<u>or at any time after that date</u> until all court-ordered restitution and outstanding disciplinary costs have been paid.

Disbarment is the presumed sanction for lawyers found guilty of theft from a lawyer's trust account or special trust funds received or disbursed by a lawyer as guardian, personal representative, receiver, or ~~in a similar capacity such as~~ trustee ~~under a specific trust document~~.  A respondent found guilty of ~~such~~ theft ~~shall~~<u>will</u> have the opportunity to offer competent, substantial evidence to rebut the presumption that disbarment is appropriate.

Unless waived or modified by the court on motion of the respondent, an order or opinion imposing disbarment ~~shall~~<u>will</u> include a provision that prohibits the respondent from accepting new business from the date of the order or opinion and ~~shall~~<u>will</u> provide that the disbarment is effective 30 days from the date of the order or opinion so that the respondent may close out the practice of law and protect the interests of existing clients.

**(g)    [No Change]**

**(h)    Notice to Clients.**  Unless the court orders otherwise, ~~Upon~~when ~~service on~~ the respondent is served with ~~of~~ an order of disbarment, disbarment on consent, disciplinary revocation, suspension, emergency suspension, emergency probation, or placement on the inactive list for incapacity not related to misconduct, the respondent ~~shall~~must, ~~unless this requirement is waived or modified in the court's order, forthwith~~immediately furnish a copy of the order to:

(1)    [No Change]

(2)    all opposing counsel or co-counsel in the matters listed in (1), above;~~ and~~

(3)    all courts, tribunals, or adjudicative agencies before which the respondent is counsel of record~~.~~; and

(4)    all state, federal, or administrative bars of which respondent is a member.

Within 30 days after service of the order the respondent ~~shall~~must furnish bar counsel with a sworn affidavit listing the names and addresses of all persons and entities that have been furnished copies of the order.

**(i)    [No Change]**

**(j)    Restitution.**  In addition to any of the foregoing disciplinary sanctions and any disciplinary sanctions authorized elsewhere in these rules, the respondent may be ordered or agree to pay restitution to a complainant or other person if the disciplinary order finds that the respondent has received a clearly excessive, illegal, or prohibited fee or that the respondent has converted trust funds or property.  ~~In such instances t~~The amount of restitution ~~shall~~will be specifically set forth in the disciplinary order or agreement and ~~shall~~will not exceed the amount by which a fee is clearly excessive, in the case of a prohibited or illegal fee ~~shall~~will not exceed the amount of ~~such~~the fee, or in the case of conversion ~~shall~~will not exceed the amount of the conversion established in disciplinary proceedings.  The disciplinary order or agreement ~~shall~~will also state to whom restitution ~~shall~~must be made and the date by which it ~~shall~~must be completed.  Failure to comply with the order or agreement ~~shall~~will cause the respondent to become a delinquent member and will

not preclude further proceedings under these rules. The respondent must provide the bar with telephone numbers and current addresses of all individuals or entities to whom the respondent is ordered to pay restitution.

**RULE 3-5.2          EMERGENCY SUSPENSION AND INTERIM PROBATION OR INTERIM PLACEMENT ON THE INACTIVE LIST FOR INCAPACITY NOT RELATED TO MISCONDUCT**

**(a)     Petition for Emergency Suspension.**

(1)     *Great Public Harm.*  On petition of The Florida Bar, authorized by its president, president-elect, or executive director, supported by 1 or more affidavits demonstrating facts personally known to the affiants that, if unrebutted, would establish clearly and convincingly that ~~an attorney~~a lawyer appears to be causing great public harm, the Supreme Court of Florida may issue an order suspending the ~~said attorney~~lawyer on an emergency basis.

(2)     *Discipline by Foreign Jurisdiction*.  On petition of The Florida Bar, authorized by its president, president-elect, or executive director, supported by a certified copy of an order of a foreign disciplinary jurisdiction suspending or disbarring ~~an attorney~~a lawyer from the practice of law, the Supreme Court of Florida may issue an order suspending the ~~attorney~~lawyer on an emergency basis. See subdivision (*l*) of rule 3-7.2.

A petition for emergency suspension ~~shall~~will also constitute a formal complaint.  The respondent ~~shall~~will have 20 days after docketing by the Supreme Court of Florida of its order granting the bar's petition for emergency suspension in which to file an answer and any affirmative defenses to the bar's petition.

**(b)    Petition for Interim Probation or Interim Placement on the Inactive List for Incapacity Not Related to Misconduct.** ~~On petition of The Florida Bar, authorized by its president, president-elect, or executive director, supported by 1 or more affidavits demonstrating facts personally known to the affiants that, if unrebutted, would establish clearly and convincingly that conditions or restrictions on a lawyer's privilege to practice law in Florida are necessary for protection of the public, the Supreme Court of Florida may issue an order placing said lawyer on interim probation, the conditions of which shall be as provided in rule 3-5.1(c); or placing the lawyer on the inactive list for incapacity~~

~~not related to misconduct as provided in rule 3-7.13.~~  The Supreme Court of Florida may issue an order placing a lawyer on interim probation, under the conditions provided in subdivision (c) of rule 3-5.1 or placing the lawyer on the inactive list for incapacity not related to misconduct as provided in rule 3-7.13. Such order may be issued upon petition of The Florida Bar, authorized by its president, president-elect, or executive director, supported by 1 or more affidavits demonstrating facts personally known to the affiants that, if unrebutted, would establish clearly and convincingly that conditions or restrictions on a lawyer's privilege to practice law in Florida are necessary for protection of the public.  This petition ~~shall~~will also constitute the formal complaint.  The respondent ~~shall~~will have 20 days after docketing by the Supreme Court of Florida of its order granting the bar's petition for interim probation in which to file an answer and any affirmative defenses to the bar's petition.

     **(c)  Trust Accounts.**  Any order of emergency suspension or probation that restricts the attorney in maintaining a trust account ~~shall, when~~will be served on the respondent and any bank or other financial institution maintaining an account against which ~~said attorney~~the respondent may make withdrawals~~,~~.  The order will serve as an injunction to prevent ~~said~~the bank or financial institution from making further payment from ~~such~~the trust account or accounts on any obligation except in accordance with restrictions imposed by the court through subsequent orders issued by a court-appointed referee.  Bar counsel will serve a copy of the Supreme Court of Florida's order freezing a lawyer's trust account via first class mail on the bank(s) in which the respondent's trust account is held.

     (1)  The court's order appointing a referee under this rule may authorize the referee to determine entitlement to funds in the frozen trust account. Any client or third party claiming to be entitled to funds in the frozen trust account must file a petition requesting release of frozen trust account funds with the referee appointed in the case, accompanied by proof of entitlement to the funds.

     (2)  Bar counsel and bar auditors will provide information to the appointed referee from bar audits and other existing information regarding persons claiming ownership of frozen trust account funds.  The bar will notify persons known to bar staff  in writing via regular first class mail of their possible interest in funds contained in the frozen trust account.  The notices will include a copy of the form of a petition requesting release of frozen trust account funds, to be filed with the referee and instructions for completing the form.  The bar will publish, in the local county or city newspaper published where the lawyer practiced before suspension, a notice informing the public that the lawyer's trust account has been

- 20 -

frozen and those persons with claims on the funds should contact listed bar counsel within 30 days after publication whenever possible.

(A)  If there are no responses to the notices mailed and published by the bar within 90 days from the date of the notice or if the amount in the frozen trust account is over $100,000, a receiver may be appointed by the referee to determine the person rightfully entitled to the frozen trust funds.  The receiver will be paid from the corpus of the trust funds unless the referee orders otherwise.

(B)  In all other instances, a referee shall determine who is entitled to funds in the frozen trust account, unless the amount in the frozen trust account is $5,000 or less and no persons with potential entitlement to frozen trust account funds respond to the bar's mailed or published notices within 90 days from the date of the notice.  In such event, the funds will be unfrozen.

**(d)   Referee Review of Frozen Trust Account Petitions.**  The referee will determine when and how to pay the claim of any person entitled to funds in the frozen trust account after reviewing the bar's audit report, the lawyer's trust account records, the petitions filed or the receiver's recommendations.  If the bar's audit report or other reliable evidence shows that funds have been stolen or misappropriated from the lawyer's trust account, then the referee may hold a hearing.  Subchapter 3-7 will not apply to a referee hearing under this rule.  No pleadings will be filed, only petitions requesting release of frozen trust account funds.  The parties to this referee proceeding will be those persons filing a petition requesting release of frozen trust account funds.  The bar will not be a party to the proceeding.  The referee's order will be the final order in the matter unless one of the parties petitions for review of the referee's order to the Supreme Court of Florida.  The sole issue before the referee will be determination of ownership of the frozen trust account funds.  The referee will determine the percentage of monies missing from the respondent's trust account and the amounts owing to those petitioners requesting release of frozen trust account funds.  A pro rata distribution is the method of distribution when there are insufficient funds in the account to pay all claims in full.  The referee's decision is subject only to direct petition for review of the referee's final order by a party claiming an ownership interest in the frozen trust funds.  The petition for review must be filed within 60 days of the referee's final order.  The schedule for filing of briefs in the appellate process will be as set forth in subchapter 3-7 of these rules.

**(e)    Separate Funds in Frozen Trust Accounts.**  The referee will order return of any separate funds to their rightful owner(s) in full upon their filing a petition requesting release of frozen trust account funds with proof of entitlement to the funds.  Separate funds are monies deposited into the respondent's trust account after the misappropriation, which are not affected by the misappropriation, and funds that have been placed into a separate segregated individual trust account under the individual client's tax identification number.

**(df) New Cases and Existing Clients.**  Any order of emergency suspension issued under this rule shallwill immediately preclude the attorney from accepting any new cases and unless otherwise ordered permit the attorney to continue to represent existing clients for only the first 30 days after issuance of suchan emergency order.  Any fees paid to the suspended attorney during the 30-day period shallwill be deposited in a trust account from which withdrawals may be made only in accordance with restrictions imposed by the court.

**(eg) Motions for Dissolution.**  The lawyer may move at any time for dissolution or amendment of an emergency order by motion filed with the Supreme Court of Florida, a copy of which will be served on bar counsel.  SuchThe motion shallwill not stay any other proceedings and applicable time limitations in the case and, unless the motion fails to state good cause or is procedurally barred as an invalid successive motion, shallwill immediately be assigned to a referee designated by the chief justice.  The filing of suchthe motion shallwill not stay the operation of an order of emergency suspension or interim probation entered under this rule.

**(fh) Appointment of Referee.**  UpoOn entry of an order of suspension or interim probation, as provided above, the Supreme Court of Florida shallwill promptly appoint or direct the appointment of a referee.  On determination that funds have been misappropriated from a lawyer's trust account as provided above, the Supreme Court of  Florida will promptly appoint or direct the appointment of a referee.

**(gi)      Hearing on Petition to Terminate or Modify Suspension.**  The referee shallwill hear a motion to terminate or modify a suspension or interim probation imposed under this rule within 7 days of assignment and submit a report and recommendation to the Supreme Court of Florida within 7 days of the date of the hearing.  The referee shallwill recommend dissolution or amendment, whichever is appropriate, to the extent that bar counsel cannot demonstrate a

likelihood of prevailing on the merits on any element of the underlying rule violations.

(~~h~~j) **Successive Motions Prohibited.**  Successive motions for dissolution ~~shall~~will be summarily dismissed by the Supreme Court of Florida to the extent that they raise issues that were or with due diligence could have been raised in a prior motion.

(~~i~~k)     **Review by the Supreme Court of Florida.**  ~~Upo~~On receipt of the referee's recommended order on the motion for dissolution or amendment, the Supreme Court of Florida ~~shall~~will review and act upon the referee's findings and recommendations regarding emergency suspensions and interim probations.  This subdivision does not apply to a referee's final order to determine ownership of funds in frozen trust accounts.  These final orders of referee are reviewable by the Supreme Court of Florida only if a party timely files a petition for review pursuant to this rule.  Briefing schedules following the petition for review will be as set forth in subchapter 3-7 of these rules.

(~~j~~l)     **Hearings on Issues Raised in Petitions for Emergency Suspension or Interim Probation and Sanctions.**  Once the Supreme Court of Florida has granted a petition for emergency suspension or interim probation as set forth in this rule, the referee appointed by the court ~~shall~~will hear the matter in the same manner as provided in rule 3-7.6, except that the referee ~~shall~~will hear the matter after the lawyer charged ~~shall have~~has answered the charges in the petition for emergency suspension or interim probation or when the time has expired for filing an answer.  The referee ~~shall~~will issue a final report and recommendation within 90 days of appointment.  If the time limit specified in this subdivision is not met, that portion of an emergency order imposing a suspension or interim probation ~~shall~~will be automatically dissolved, except upon order of the Supreme Court of Florida, provided that any other appropriate disciplinary action on the underlying conduct still may be taken.

(~~k~~m)     **Proceedings in the Supreme Court of Florida.**  Consideration of the referee's report and recommendation ~~shall~~regarding emergency suspension and interim probation will be expedited in the Supreme Court of Florida.  If oral argument is granted, the chief justice ~~shall~~will schedule oral argument as soon as practicable.

**(*l*n)** **Waiver of Time Limits.** The respondent may at any time waive the time requirements set forth in this rule by written request made to and approved by the referee assigned to hear the matter.

**RULE 3-5.3** **DIVERSION OF DISCIPLINARY CASES TO PRACTICE AND PROFESSIONALISM ENHANCEMENT PROGRAMS**

**(a) – (b)** **[No Change]**

**(c)** **Limitation on Diversion.** A respondent who has been the subject of a prior diversion ~~within 7 years shall not be~~ is not eligible for diversion for the same type of rule violation for a period of 5 years after the earlier diversion. However, a respondent who has been the subject of a prior diversion and then is alleged to have violated a completely different type of rule at least 1 year after the initial diversion, will be eligible for a practice and professionalism enhancement program.

**(d) – (*l*)** **[No Change]**

## COMMENT

As to subdivision (c) of 3-5.3, a lawyer who agreed to attend the Advertising Workshop in 1 year would not be eligible for another such diversion for an advertising violation for a period of 5 years following the first diversion. However, that same lawyer would be eligible to attend the Advertising Workshop 1 year and a Trust Account Workshop for a completely different violation 1 year after the first diversion is completed.

**RULE 3-7.9** **CONSENT JUDGMENT**

**(a) – (c)** **[No Change]**

**(d)** **Content of Conditional Pleas.** All conditional pleas shall show clearly by reference or otherwise the disciplinary offenses to which the plea is made. All conditional pleas in which the respondent agrees to the imposition of a suspension or disbarment shall include an acknowledgment that, unless waived or modified by the court on motion of the respondent, the court order accepting the

conditional plea will contain a provision that prohibits the respondent from accepting new business from the date of the order or opinion and shall provide that the suspension or disbarment is effective 30 days from the date of the order or opinion so that the respondent may close out the practice of law and protect the interests of existing clients.  A conditional plea may not permit a respondent to begin serving a suspension or disbarment until the Supreme Court of Florida issues an order or opinion approving the recommended discipline.

**(e) – (f)     [No Change]**


**RULE 3-7.10     REINSTATEMENT AND READMISSION PROCEDURES**

**(a)   [No Change]**

**(b)  Petitions; Form and Contents.**

(1)     *Filing.*  The original petition for reinstatement ~~and 1 copy~~ must be ~~in writing,~~ verified by the petitioner~~, and addressed to~~ and filed with the Supreme Court of Florida in compliance with the Florida Rules of Civil Procedure and the Florida Rules of Judicial Administration.  A copy must be served on Staff Counsel, The Florida Bar, ~~651 East Jefferson Street, Tallahassee, Florida 32399-2300~~ in compliance with applicable court rules.  The petition for reinstatement may not be filed until the petitioner has completed at least 80% of the term of that lawyer's period of suspension.

(2)     *Form and Exhibits.*  The petition must be in ~~such~~ the form and accompanied by ~~such~~ the exhibits ~~as~~ provided for elsewhere in this rule.  The information required concerning the petitioner may include any or all of the following matters in addition to ~~such~~ any other matters ~~as~~ that may be reasonably required to determine the fitness of the petitioner to resume the practice of law: criminal and civil judgments; disciplinary judgments; copies of income tax returns together with consents to secure original returns; occupation during suspension and employment related information; financial statements; and statement of restitution of funds that were the subject matter of disciplinary proceedings.  In cases seeking reinstatement from incapacity, the petition must also include copies of all pleadings in the matter leading to placement on the inactive list and all ~~such~~ other matters ~~as may be~~ reasonably required to demonstrate the character and fitness of the petitioner to resume the practice of law.

**(c)    Deposit for Cost.**  The petition must be accompanied by proof of a deposit paid to The Florida Bar in ~~such~~the amount ~~as~~ the board of governors prescribes to ensure payment of reasonable costs of the proceedings, as provided elsewhere in this rule.

**(d)    Reference of Petition ~~For~~for Hearing.**  The chief justice will refer the petition for reinstatement to a referee for hearing; provided, however, that no such ~~reference~~referral will be made until evidence is submitted showing that all costs assessed against the petitioner in all disciplinary or incapacity proceedings have been paid and restitution has been made.

**(e)    Bar Counsel.**  When a petition for reinstatement is filed, the board of governors or staff counsel, if authorized by the board of governors, may appoint bar counsel to represent The Florida Bar in the proceeding.  The ~~duties of such lawyers are~~lawyer's duty is to appear at the hearings and to prepare and present to the referee evidence that, in the opinion of the referee or ~~such~~ lawyer, ~~should~~will be considered in passing upon the petition.

**(f)    Determination of Fitness by Referee Hearing.**  The referee to whom the petition for reinstatement is referred must conduct the hearing as a trial, in the same manner, to the extent practical, as provided elsewhere in these rules.  The ~~matter to decide is~~referee must decide the fitness of the petitioner to resume the practice of law.  In ~~determining the fitness of the petitioner to resume the practice of law~~making this determination, the referee will consider whether the petitioner has engaged in any disqualifying conduct, the character and fitness of the petitioner, and whether the petitioner has been rehabilitated, as further described in this subdivision.  All conduct engaged in after the date of admission to The Florida Bar is relevant in proceedings under this rule.

(1)    *Disqualifying Conduct.*  A record manifesting a deficiency in the honesty, trustworthiness, diligence, or reliability of a petitioner may constitute a basis for denial of reinstatement.  The following are considered disqualifying conduct:

(A) – (N)    [No Change]

(*O*)    any other conduct that ~~reflects adversely~~adversely reflects ~~up~~on the character or fitness of the applicant.

(2)    *Determination of Character and Fitness.*  In addition to other factors in making this determination, the following factors ~~should~~will be considered in assigning weight and significance to prior conduct:

(A) – (J)    [No Change]

(3)    *Elements of Rehabilitation.*  Merely showing that an individual is now living as and doing those things that should be done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society.  Any petitioner for reinstatement from discipline for prior misconduct is required to produce clear and convincing evidence of ~~such~~ rehabilitation including, but not limited to, the following elements:

(A) – (G)    [No Change]

The requirement of positive action is appropriate for persons seeking reinstatement to the bar as well as for applicants for admission to the bar because service to one's community is an essential obligation of members of the bar.

(4)    *Educational Requirements.*

(A)    [No Change]

(B)    A petitioner who has been ineligible to practice for 5 years or more will not be reinstated under this rule until the petitioner has re-taken and provided proof in the lawyer's petition for reinstatement that the lawyer has passed both the Florida portions of the Florida Bar Examination and the Multistate Professional Responsibility Examination (MPRE).

**(g)    Hearing; Notice; Evidence.**

(1)    *Notice.*  The referee to whom the petition for reinstatement is referred will fix a time and place for hearing, and notice of the hearing will be provided at least 10 days prior to the hearing to the petitioner, to lawyers representing The Florida Bar, and to ~~such~~ other persons ~~as~~who may be designated by the appointed referee ~~to whom the petition is referred~~.

(2)    [No Change]

(3)    *Failure of Petitioner to be Examined.*  For the failure of the petitioner to submit to examination as a witness pursuant to notice given, the referee will dismiss the petition for reinstatement unless good cause is shown for suchthe failure.

(4)    *Summary Procedure.*  If after the completion of discovery bar counsel is unable to discover any evidence on which denial of reinstatement may be based and if no other person provides sameany relevant evidence, bar counsel may, with the approval of the designated reviewer and staff counsel, stipulate to the issue of reinstatement, including conditions for reinstatement.  The stipulation must include a statement of costs as provided elsewhere in these Rules Regulating the Florida Bar.

(5)    [No Change]

**(h) – (i)    [No Change]**

**(j)    Recommendation of Referee and Judgment of the Court.**  If the petitioner is found unfit to resume the practice of law, the petition will be dismissed.  If the petitioner is found fit to resume the practice of law, the referee will enter a report recommending, and the court may enter an order of, reinstatement of the petitioner in The Florida Bar; provided, however, that the reinstatement may be conditioned upon the payment of all or part of the costs of the proceeding and upon the making of partial or complete restitution to parties harmed by the petitioner's misconduct that led to the petitioner's suspension of membership in The Florida Bar or conduct that led to the petitioner's incapacity; and further provided, however, if suspension or incapacity of the petitioner has continued for more than 3 years, the reinstatement may be conditioned upon the furnishing of such proof of competency as may be required by the judgment in the discretion of the Supreme Court of Florida,. which pProof may include certification by the Florida Board of Bar Examiners of the successful completion of an examination for admission to The Florida Bar subsequent to the date of the suspension or incapacity.

**(k)    Successive Petitions.**  No petition for reinstatement may be filed within 1 year following an adverse judgment upon a petition for reinstatement filed by or on behalf of the same person.  In cases of incapacity no petition for reinstatement may be filed within 6 months following an adverse judgment under this rule.

**(*l*)    Petitions for Reinstatement to Membership in Good Standing.**

(1)     [No Change]

(2)     *Style of Petition.*  Petitions must be styled in the Supreme Court of Florida and ~~an original and 1 copy~~ filed with the ~~court~~Supreme Court of Florida in accordance with the court's filing requirements, including e-filing requirements where applicable.  A copy must be served on Staff Counsel, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300.

(3)     *Contents of Petition.*  The petition must be verified by the petitioner and accompanied by a written authorization to the District Director of the Internal Revenue Service, authorizing the furnishing of certified copies of the petitioner's tax returns for the past 5 years or since admission to the bar, whichever is greater.  The authorization must be furnished on a separate sheet.  The petition must have attached as an exhibit a true copy of all disciplinary judgments previously entered against the petitioner.  It must also include the petitioner's statement concerning the following:

(A)     [No Change]

(B)     the conduct, offense, or misconduct ~~up~~on which the suspension or incapacity was based, together with the date of such suspension or incapacity;

(C)     the names and addresses of all complaining witnesses in any disciplinary proceedings that resulted in suspension; and the name and address of the referee or judge who heard ~~such~~these disciplinary proceedings or of the trial judge, complaining witnesses, and prosecuting lawyer, if suspension was based ~~up~~on conviction of a felony or misdemeanor involving moral turpitude;

(D)     the nature of the petitioner's occupation in detail since suspension or incapacity, with names and addresses of all partners, associates in business, and employers, if any, and dates and duration of all ~~such~~these relations and employments;

(E)     a statement showing the approximate monthly earnings and other income of the petitioner and the sources from which all ~~such~~ earnings and income were derived during ~~said~~this period;

(F)    a statement showing all residences maintained during ~~said~~this period, with names and addresses of landlords, if any;

(G) – (I)    [No Change]

(J)    a statement as to whether any applications were made during the period of suspension for a license requiring proof of good character for its procurement; and, ~~as to~~for each ~~such~~ application, the date and the name and address of the authority to whom it was addressed and its disposition;

(K)    a statement of any procedure or inquiry, during the period of suspension, covering the petitioner's standing as a member of any profession or organization, or holder of any license or office, that involved the censure, removal, suspension, revocation of license, or discipline of the petitioner; and, as to each, the dates, facts, and the disposition, and the name and address of the authority in possession of these records;

(L)    a statement as to whether any charges of fraud were made or claimed against the petitioner during the period of suspension, whether formal or informal, together with the dates and names and addresses of persons making ~~such~~these charges;

(M)    [No Change]

(N)    a statement showing the dates, general nature, and final disposition of every civil action in which the petitioner was either a party plaintiff or defendant, together with dates of filing of complaints, titles of courts and causes, and the names and addresses of all parties and of the trial judge or judges, and names and addresses of all witnesses who testified in ~~said~~this action or actions; and

(*O*)    a statement showing what amounts, if any, of the costs assessed against the accused lawyer in the prior disciplinary proceedings against the petitioner have been paid by the petitioner and the source and amount of funds used for this purpose.

(4)    *Comments on Petition.*  ~~Upo~~On the appointment of a referee and bar counsel, copies of the petition will be furnished by the bar counsel to local board members, local grievance committees, and to ~~such~~ other persons ~~as are~~ mentioned in this rule.  Persons or groups that wish to respond must direct their comments to bar counsel.  The proceedings and finding of the referee will relate to

those matters described in this rule and also to those matters tending to show the petitioner's rehabilitation, present fitness to resume the practice of law, and the effect of ~~such~~the proposed reinstatement ~~up~~on the administration of justice and purity of the courts and confidence of the public in the profession.

(5)     [No Change]

**(m) – (n)     [No Change]**

## COMMENT

[No Change]

## RULE 4-1.6     CONFIDENTIALITY OF INFORMATION

**(a)   [No Change]**

**(b)   When Lawyer Must Reveal Information.**  A lawyer must reveal ~~such~~confidential information to the extent the lawyer reasonably believes necessary:

(1) – (2)   [No Change]

**(c)   When Lawyer May Reveal Information.**  A lawyer may reveal ~~such~~confidential information to the extent the lawyer reasonably believes necessary:

(1) – (2)   [No Change]

(3)     to establish a defense to a criminal charge or civil claim against the lawyer based ~~up~~on conduct in which the client was involved;

(4)     to respond to allegations in any proceeding concerning the lawyer's representation of the client; ~~or~~

(5)     to comply with the Rules Regulating The Florida Bar~~.~~; or

(6)     to detect and resolve conflicts of interest between lawyers in different firms arising from the lawyer's change of employment or from changes in

the composition or ownership of a firm, but only if the revealed information would not compromise the attorney-client privilege or otherwise prejudice the client.

**(d)   Exhaustion of Appellate Remedies.**  When required by a tribunal to reveal ~~such~~confidential information, a lawyer may first exhaust all appellate remedies.

**(e)   Inadvertent Disclosure of Information.**  A lawyer must make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client.

**(e̶f)   Limitation on Amount of Disclosure.**  When disclosure is mandated or permitted, the lawyer must disclose no more information than is required to meet the requirements or accomplish the purposes of this rule.

## COMMENT

The lawyer is part of a judicial system charged with upholding the law.  One of the lawyer's functions is to advise clients so that they avoid any violation of the law in the proper exercise of their rights.

This rule governs the disclosure by a lawyer of information relating to the representation of a client during the lawyer's representation of the client.  See rule 4-1.18 for the lawyer's duties with respect to information provided to the lawyer by a prospective client, rule 4-1.9(c) for the lawyer's duty not to reveal information relating to the lawyer's prior representation of a former client, and rules 4-1.8(b) and 4-1.9(b) for the lawyer's duties with respect to the use of ~~such~~confidential information to the disadvantage of clients and former clients.

A fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation.  See terminology for the definition of informed consent.  This contributes to the trust that is the hallmark of the client-lawyer relationship.  The client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter.  The lawyer needs this information to represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct.  Almost without exception, clients come to lawyers in order to determine their rights and what is, in the complex of laws and regulations, deemed to be legal and

correct.  Based ~~upon~~on experience, lawyers know that almost all clients follow the advice given, and the law is upheld.

The principle of confidentiality is given effect in 2 related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics.  The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client.  The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law.  The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.  A lawyer may not disclose ~~such~~confidential information except as authorized or required by the Rules Regulating The Florida Bar or by law.  However, none of the foregoing limits the requirement of disclosure in subdivision (b).  This disclosure is required to prevent a lawyer from becoming an unwitting accomplice in the fraudulent acts of a client.  See also Scope.

The requirement of maintaining confidentiality of information relating to representation applies to government lawyers who may disagree with the policy goals that their representation is designed to advance.

**Authorized disclosure**

A lawyer is impliedly authorized to make disclosures about a client when appropriate in carrying out the representation, except to the extent that the client's instructions or special circumstances limit that authority.  In litigation, for example, a lawyer may disclose information by admitting a fact that cannot properly be disputed or in negotiation by making a disclosure that facilitates a satisfactory conclusion.

Lawyers in a firm may, in the course of the firm's practice, disclose to each other information relating to a client of the firm, unless the client has instructed that particular information be confined to specified lawyers.

**Disclosure adverse to client**

The confidentiality rule is subject to limited exceptions.  In becoming privy to information about a client, a lawyer may foresee that the client intends serious harm to another person. However, to the extent a lawyer is required or permitted to

disclose a client's purposes, the client will be inhibited from revealing facts that would enable the lawyer to counsel against a wrongful course of action. While the public may be protected if full and open communication by the client is encouraged, several situations must be distinguished.

First, the lawyer may not counsel or assist a client in conduct that is criminal or fraudulent. See rule 4-1.2(d). Similarly, a lawyer has a duty under rule 4-3.3(a)(4) not to use false evidence. This duty is essentially a special instance of the duty prescribed in rule 4-1.2(d) to avoid assisting a client in criminal or fraudulent conduct.

Second, the lawyer may have been innocently involved in past conduct by the client that was criminal or fraudulent. In ~~such a~~this situation the lawyer has not violated rule 4-1.2(d), because to "counsel or assist" criminal or fraudulent conduct requires knowing that the conduct is of that character.

Third, the lawyer may learn that a client intends prospective conduct that is criminal. As stated in subdivision (b)(1), the lawyer must reveal information in order to prevent ~~such~~these consequences. It is admittedly difficult for a lawyer to "know" when the criminal intent will actually be carried out, for the client may have a change of mind.

Subdivision (b)(2) contemplates past acts on the part of a client that may result in present or future consequences that may be avoided by disclosure of otherwise confidential communications. Rule 4-1.6(b)(2) would now require the lawyer to disclose information reasonably necessary to prevent the future death or substantial bodily harm to another, even though the act of the client has been completed.

The lawyer's exercise of discretion requires consideration of such factors as the nature of the lawyer's relationship with the client and with those who might be injured by the client, the lawyer's own involvement in the transaction, and factors that may extenuate the conduct in question. Where practical the lawyer should seek to persuade the client to take suitable action. In any case, a disclosure adverse to the client's interest should be no greater than the lawyer reasonably believes necessary to the purpose.

**Withdrawal**

If the lawyer's services will be used by the client in materially furthering a course of criminal or fraudulent conduct, the lawyer must withdraw, as stated in rule 4-1.16(a)(1).

After withdrawal the lawyer is required to refrain from making disclosure of the client's confidences, except as otherwise provided in rule 4-1.6. Neither this rule nor rule 4-1.8(b) nor rule 4-1.16(d) prevents the lawyer from giving notice of the fact of withdrawal, and the lawyer may also withdraw or disaffirm any opinion, document, affirmation, or the like.

Where the client is an organization, the lawyer may be in doubt whether contemplated conduct will actually be carried out by the organization. Where necessary to guide conduct in connection with the rule, the lawyer may make inquiry within the organization as indicated in rule 4-1.13(b).

**Dispute concerning lawyer's conduct**

A lawyer's confidentiality obligations do not preclude a lawyer from securing confidential legal advice about the lawyer's personal responsibility to comply with these rules. In most situations, disclosing information to secure ~~such~~this advice will be impliedly authorized for the lawyer to carry out the representation. Even when the disclosure is not impliedly authorized, subdivision (c)(5) permits ~~such~~this disclosure because of the importance of a lawyer's compliance with the Rules of Professional Conduct.

Where a legal claim or disciplinary charge alleges complicity of the lawyer in a client's conduct or other misconduct of the lawyer involving representation of the client, the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a defense. The same is true with respect to a claim involving the conduct or representation of a former client. The lawyer's right to respond arises when an assertion of ~~such~~ complicity has been made. Subdivision (c) does not require the lawyer to await the commencement of an action or proceeding that charges ~~such~~ complicity, so that the defense may be established by responding directly to a third party who has made ~~such an~~the assertion. The right to defend, of course, applies where a proceeding has been commenced. Where practicable and not prejudicial to the lawyer's ability to establish the defense, the lawyer should advise the client of the third party's assertion and request that the client respond appropriately. In any event, disclosure should be no greater than the lawyer reasonably believes is necessary to vindicate innocence, the disclosure should be made in a manner that limits access to the information to the tribunal or other

persons having a need to know it, and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.

If the lawyer is charged with wrongdoing in which the client's conduct is implicated, the rule of confidentiality should not prevent the lawyer from defending against the charge. ~~Such a~~A charge can arise in a civil, criminal, or professional disciplinary proceeding and can be based on a wrong allegedly committed by the lawyer against the client or on a wrong alleged by a third person; for example, a person claiming to have been defrauded by the lawyer and client acting together. A lawyer entitled to a fee is permitted by subdivision (c) to prove the services rendered in an action to collect it. This aspect of the rule expresses the principle that the beneficiary of a fiduciary relationship may not exploit it to the detriment of the fiduciary. As stated above, the lawyer must make every effort practicable to avoid unnecessary disclosure of information relating to a representation, to limit disclosure to those having the need to know it, and to obtain protective orders or make other arrangements minimizing the risk of disclosure.

**Disclosures otherwise required or authorized**

The attorney-client privilege is differently defined in various jurisdictions. If a lawyer is called as a witness to give testimony concerning a client, absent waiver by the client, rule 4-1.6(a) requires the lawyer to invoke the privilege when it is applicable. The lawyer must comply with the final orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client.

The Rules of Professional Conduct in various circumstances permit or require a lawyer to disclose information relating to the representation. See rules 4-2.3, 4-3.3, and 4-4.1. In addition to these provisions, a lawyer may be obligated or permitted by other provisions of law to give information about a client. Whether another provision of law supersedes rule 4-1.6 is a matter of interpretation beyond the scope of these rules, but a presumption should exist against ~~such~~ a supersession.

**Detection of Conflicts of Interest**

Subdivision (c)(6) recognizes that lawyers in different firms may need to disclose limited information to each other to detect and resolve conflicts of interest, for example, when a lawyer is considering an association with another firm, two or more firms are considering a merger, or a lawyer is considering the purchase of a

law practice.  See comment to rule 4-1.17.  Under these circumstances, lawyers and law firms are permitted to disclose limited information, but only once substantive discussions regarding the new relationship have occurred.  Any disclosure should ordinarily include no more than the identity of the persons and entities involved in a matter, a brief summary of the general issues involved, and information about whether the matter has terminated.  Even this limited information, however, should be disclosed only to the extent reasonably necessary to detect and resolve conflicts of interest that might arise from the possible new relationship.  The disclosure of any information is prohibited if it would compromise the attorney-client privilege or otherwise prejudice the client (e.g., the fact that a corporate client is seeking advice on a corporate takeover that has not been publicly announced; that a person has consulted a lawyer about the possibility of divorce before the person's intentions are known to the person's spouse; or that a person has consulted a lawyer about a criminal investigation that has not led to a public charge).  Under those circumstances, subdivision (a) prohibits disclosure unless the client or former client gives informed consent.  A lawyer's fiduciary duty to the lawyer's firm may also govern a lawyer's conduct when exploring an association with another firm and is beyond the scope of these rules.

Any information disclosed under this subdivision may be used or further disclosed only to the extent necessary to detect and resolve conflicts of interest. This subdivision does not restrict the use of information acquired by means independent of any disclosure under this subdivision.  This subdivision also does not affect the disclosure of information within a law firm when the disclosure is otherwise authorized, for example, when a lawyer in a firm discloses information to another lawyer in the same firm to detect and resolve conflicts of interest that could arise in connection with undertaking a new representation.

**Acting Competently to Preserve Confidentiality**

Paragraph (e) requires a lawyer to act competently to safeguard information relating to the representation of a client against unauthorized access by third parties and against inadvertent or unauthorized disclosure by the lawyer or other persons who are participating in the representation of the client or who are subject to the lawyer's supervision.  See rules 4-1.1, 4-5.1 and 4-5.3.  The unauthorized access to, or the inadvertent or unauthorized disclosure of, information relating to the representation of a client does not constitute a violation of paragraph (e) if the lawyer has made reasonable efforts to prevent the access or disclosure.  Factors to be considered in determining the reasonableness of the lawyer's efforts include, but are not limited to, the sensitivity of the information, the likelihood of disclosure

if additional safeguards are not employed, the cost of employing additional safeguards, the difficulty of implementing the safeguards, and the extent to which the safeguards adversely affect the lawyer's ability to represent clients (e.g., by making a device or important piece of software excessively difficult to use). A client may require the lawyer to implement special security measures not required by this rule or may give informed consent to forgo security measures that would otherwise be required by this rule. Whether a lawyer may be required to take additional steps to safeguard a client's information in order to comply with other law, for example state and federal laws that govern data privacy or that impose notification requirements on the loss of, or unauthorized access to, electronic information, is beyond the scope of these rules. For a lawyer's duties when sharing information with nonlawyers outside the lawyer's own firm, see the comment to rule 4-5.3.

When transmitting a communication that includes information relating to the representation of a client, the lawyer must take reasonable precautions to prevent the information from coming into the hands of unintended recipients. This duty, however, does not require that the lawyer use special security measures if the method of communication affords a reasonable expectation of privacy. Special circumstances, however, may warrant special precautions. Factors to be considered in determining the reasonableness of the lawyer's expectation of confidentiality include the sensitivity of the information and the extent to which the privacy of the communication is protected by law or by a confidentiality agreement. A client may require the lawyer to implement special security measures not required by this rule or may give informed consent to the use of a means of communication that would otherwise be prohibited by this rule. Whether a lawyer may be required to take additional steps in order to comply with other law, for example state and federal laws that govern data privacy, is beyond the scope of these rules.

**Former client**

The duty of confidentiality continues after the client-lawyer relationship has terminated. See rule 4-1.9 for the prohibition against using such information to the disadvantage of the former client.

## RULE 4-1.17    SALE OF LAW PRACTICE

A lawyer or a law firm may sell or purchase a law practice, or an area of practice, including good will, provided that:

**(a)   [No Change]**

**(b)   Notice to Clients.**  Written notice is served by certified mail, return receipt requested, ~~up~~on each of the seller's clients of:

(1) – (3)   [No Change]

**(c)   Court Approval Required.**  If a representation involves pending litigation, there ~~shall~~will be no substitution of counsel or termination of representation unless authorized by the court.  The seller may disclose, in camera, to the court information relating to the representation only to the extent necessary to obtain an order authorizing the substitution of counsel or termination of representation.

**(d)   Client Objections.**  If a client objects to the proposed substitution of counsel, the seller ~~shall~~must comply with the requirements of rule 4-1.16(d).

**(e)   Consummation of Sale.**  A sale of a law practice ~~shall~~may not be consummated until:

(1)     with respect to clients of the seller who were served with written notice of the proposed sale, the 30-day period referred to in subdivision (b)(3) has expired or all ~~such~~these clients have consented to the substitution of counsel or termination of representation; and

(2)     court orders have been entered authorizing substitution of counsel for all clients who could not be served with written notice of the proposed sale and whose representations involve pending litigation; provided, in the event the court fails to grant a substitution of counsel in a matter involving pending litigation, that matter ~~shall~~may not be included in the sale and the sale otherwise ~~shall~~will be unaffected.  Further, the matters not involving pending litigation of any client who cannot be served with written notice of the proposed sale ~~shall~~may not be included in the sale and the sale otherwise ~~shall~~will be unaffected.

**(f)   Existing Fee Contracts Controlling.**  The purchaser ~~shall~~must honor the fee agreements that were entered into between the seller and the seller's clients. The fees charged clients ~~shall~~may not be increased by reason of the sale.

# COMMENT

The practice of law is a profession, not merely a business. Clients are not commodities that can be purchased and sold at will. In accordance with the requirements of this rule, when a lawyer or an entire firm sells the practice and other lawyers or firms take over the representation, the selling lawyer or firm may obtain compensation for the reasonable value of the practice as may withdrawing partners of law firms. See rules 4-5.4 and 4-5.6.

The requirement that all of the private practice, or all of an area of practice, be sold is satisfied if the seller in good faith makes the entire practice, or area of practice, available for sale to the purchasers. The fact that a number of the seller's clients decide not to be represented by the purchasers but take their matters elsewhere, therefore, does not result in a violation. Similarly, a violation does not occur merely because a court declines to approve the substitution of counsel in the cases of a number of clients who could not be served with written notice of the proposed sale.

## Sale of entire practice or entire area of practice

The rule requires that the seller's entire practice, or an area of practice, be sold. The prohibition against sale of less than an entire practice area protects those clients whose matters are less lucrative and who might find it difficult to secure other counsel if a sale could be limited to substantial fee-generating matters. The purchasers are required to undertake all client matters in the practice, or practice area, subject to client consent or court authorization. This requirement is satisfied, however, even if a purchaser is unable to undertake a particular client matter because of a conflict of interest.

## Client confidences, consent, and notice

Negotiations between seller and prospective purchaser prior to disclosure of information relating to a specific representation of an identifiable client do not violate the confidentiality provisions of rule 4-1.6 any more than do preliminary discussions concerning the possible association of another lawyer or mergers between firms, with respect to which client consent ordinarily is not required. See rule 4-1.6(c)(6). Providing the prospective purchaser access to ~~client specific~~detailed information relating to the representation, for example, ~~and to~~the file, however, requires client consent or court authorization. See rule 4-1.6. Rule

4-1.17 provides that the seller must attempt to serve each client with written notice of the contemplated sale, including the identity of the purchaser and the fact that the decision to consent to the substitution of counsel or to make other arrangements must be made within 30 days. If nothing is heard within that time from a client who was served with written notice of the proposed sale, that client's consent to the substitution of counsel is presumed. However, with regard to clients whose matters involve pending litigation but who could not be served with written notice of the proposed sale, authorization of the court is required before the files and client-specific information relating to the representation of those clients may be disclosed by the seller to the purchaser and before counsel may be substituted.

A lawyer or law firm selling a practice cannot be required to remain in practice just because some clients cannot be served with written notice of the proposed sale. Because these clients cannot themselves consent to the substitution of counsel or direct any other disposition of their representations and files, with regard to clients whose matters involve pending litigation the rule requires an order from the court authorizing the substitution (or withdrawal) of counsel. The court can be expected to determine whether reasonable efforts to locate the client have been exhausted, and whether the absent client's legitimate interests will be served by authorizing the substitution of counsel so that the purchaser may continue the representation. Preservation of client confidences requires that the petition for a court order be considered in camera. If, however, the court fails to grant substitution of counsel in a matter involving pending litigation, that matter shallmay not be included in the sale and the sale may be consummated without inclusion of that matter.

The rule provides that matters not involving pending litigation of clients who could not be served with written notice may not be included in the sale. This is because the clients' consent to disclosure of confidential information and to substitution of counsel cannot be obtained and because the alternative of court authorization ordinarily is not available in matters not involving pending litigation. Although suchthese matters shallmay not be included in the sale, the sale may be consummated without inclusion of those matters.

If a client objects to the proposed substitution of counsel, the rule treats the seller as attempting to withdraw from representation of that client and, therefore, provides that the seller must comply with the provisions of rule 4-1.16 concerning withdrawal from representation. Additionally, the seller must comply with applicable requirements of law or rules of procedure.

All the elements of client autonomy, including the client's absolute right to discharge a lawyer and transfer the representation to another, survive the sale of the practice or an area of practice.

**Fee arrangements between client and purchaser**

The sale may not be financed by increases in fees charged the clients of the practice. Existing agreements between the seller and the client as to fees and the scope of the work must be honored by the purchaser. This obligation of the purchaser is a factor that can be taken into account by seller and purchaser when negotiating the sale price of the practice.

**Other applicable ethical standards**

Lawyers participating in the sale of a law practice or a practice area are subject to the ethical standards applicable to involving another lawyer in the representation of a client for all matters pending at the time of the sale. These include, for example, the seller's ethical obligation to exercise competence in identifying a purchaser qualified to assume the practice and the purchaser's obligation to undertake the representation competently (see rule 4-1.1); the obligation to avoid disqualifying conflicts, and to secure the client's informed consent for those conflicts that can be agreed to (see rule 4-1.7 regarding conflicts and see the terminology section of the preamble for the definition of informed consent); and the obligation to protect information relating to the representation (see rules 4-1.6, 4-1.8(b), and 4-1.9(b) and (c)). If the terms of the sale involve the division between purchaser and seller of fees from matters that arise subsequent to the sale, the fee-division provisions of rule 4-1.5 must be satisfied with respect to ~~such~~these fees. These provisions will not apply to the division of fees from matters pending at the time of sale.

If approval of the substitution of the purchasing attorney for the selling attorney is required by the rules of any tribunal in which a matter is pending, ~~such~~ approval must be obtained before the matter can be included in the sale (see rule 4-1.16).

**Applicability of this rule**

This rule applies, among other situations, to the sale of a law practice by representatives of a lawyer who is deceased, disabled, or has disappeared. It is possible that a nonlawyer, who is not subject to the Rules of Professional Conduct,

might be involved in the sale.  When the practice of a lawyer who is deceased, is disabled, or has disappeared is being sold, the notice required by subdivision (b) of this rule must be given by someone who is legally authorized to act on the selling lawyer's behalf, ~~such as~~for example, a personal representative or a guardian.  This is because the sale of a practice and transfer of representation involve legal rights of the affected clients.

Bona fide admission to, withdrawal from, or retirement from a law partnership or professional association, retirement plans and similar arrangements, and a sale of tangible assets of a law practice, do not constitute a sale or purchase governed by this rule.


**RULE 4-5.3      RESPONSIBILITIES REGARDING NONLAWYER ASSISTANTS**

(a)   **[No Change]**

(b)   **Supervisory Responsibility.**  With respect to a nonlawyer employed or retained by or associated with a lawyer or an authorized business entity as defined elsewhere in these Rules Regulating The Florida Bar:

(1)   a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, ~~shall~~must make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

(2)   a lawyer having direct supervisory authority over the nonlawyer ~~shall~~must make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

(3)   a lawyer ~~shall be~~is responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if the lawyer:

(A)   ~~the lawyer~~ orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(B)   ~~the lawyer~~ is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

**(c)   Ultimate Responsibility of Lawyer.**  Although paralegals or legal assistants may perform the duties delegated to them by the lawyer without the presence or active involvement of the lawyer, the lawyer ~~shall~~must review and be responsible for the work product of the paralegals or legal assistants.

## COMMENT

Lawyers generally employ assistants in their practice, including secretaries, investigators, law student interns, and paraprofessionals such as paralegals and legal assistants.  Such assistants, whether employees or independent contractors, act for the lawyer in rendition of the lawyer's professional services.  A lawyer must give such assistants appropriate instruction and supervision concerning the ethical aspects of their employment, particularly regarding the obligation not to disclose information relating to representation of the client.  The measures employed in supervising nonlawyers should take account of the level of their legal training and the fact that they are not subject to professional discipline.  If an activity requires the independent judgment and participation of the lawyer, it cannot be properly delegated to a nonlawyer employee.

Subdivision (b)(1) requires lawyers with managerial authority within a law firm to make reasonable efforts to ~~establish internal policies and procedures designed to provide~~ensure that the firm has in effect measures giving reasonable assurance that nonlawyers in the firm and nonlawyers outside the firm who work on firm matters ~~will~~ act in a way compatible with the ~~Rules of Professional Conduct~~professional obligations of the lawyer.  See comment to rule 1.1 (retaining lawyers outside the firm) and comment to rule 4-5.1 (responsibilities with respect to lawyers within a firm).  Subdivision (b)(2) applies to lawyers who have supervisory authority over ~~the work of a nonlawyer~~nonlawyers within or outside the firm.  Subdivision (b)(3) specifies the circumstances in which a lawyer is responsible for conduct of ~~a nonlawyer~~nonlawyers within or outside the firm that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer.

Nothing provided in this rule should be interpreted to mean that a nonlawyer may have any ownership or partnership interest in a law firm, which is prohibited by rule 4-5.4. Additionally, this rule ~~would~~does not permit a lawyer to accept employment by a nonlawyer or group of nonlawyers, the purpose of which is to provide the supervision required under this rule. ~~Such~~This conduct is prohibited by rules 4-5.4 and 4-5.5.

**<u>Nonlawyers Outside the Firm</u>**

<u>A lawyer may use nonlawyers outside the firm to assist the lawyer in rendering legal services to the client. Examples include the retention of an investigative or paraprofessional service, hiring a document management company to create and maintain a database for complex litigation, sending client documents to a third party for printing or scanning, and using an Internet-based service to store client information. When using these services outside the firm, a lawyer must make reasonable efforts to ensure that the services are provided in a manner that is compatible with the lawyer's professional obligations. The extent of this obligation will depend on the circumstances, including the education, experience and reputation of the nonlawyer; the nature of the services involved; the terms of any arrangements concerning the protection of client information; and the legal and ethical environments of the jurisdictions in which the services will be performed, particularly with regard to confidentiality. See also rules 4-1.1 (competence), 4-1.2 (allocation of authority), 4-1.4 (communication with client), 4-1.6 (confidentiality), 4-5.4 (professional independence of the lawyer), and 4-5.5 (unauthorized practice of law). When retaining or directing a nonlawyer outside the firm, a lawyer should communicate directions appropriate under the circumstances to give reasonable assurance that the nonlawyer's conduct is compatible with the professional obligations of the lawyer.</u>

<u>Where the client directs the selection of a particular nonlawyer service provider outside the firm, the lawyer ordinarily should agree with the client concerning the allocation of responsibility for monitoring as between the client and the lawyer. See Rule 1.2. When making this allocation in a matter pending before a tribunal, lawyers and parties may have additional obligations that are a matter of law beyond the scope of these rules.</u>

## RULE 5-1.1  TRUST ACCOUNTS

(a)      **Nature of Money or Property Entrusted to Attorney.**

(1) *Trust Account Required; Location of Trust Account; Commingling Prohibited*.  A lawyer ~~shall~~must hold in trust, separate from the lawyer's own property, funds and property of clients or third persons that are in a lawyer's possession in connection with a representation.  All funds, including advances for fees, costs, and expenses, ~~shall~~must be kept in a separate bank or savings and loan association account maintained in the state where the lawyer's office is situated or elsewhere with the consent of the client or third person and clearly labeled and designated as a trust account except:

(A)      A lawyer may maintain funds belonging to the lawyer in the lawyer's trust account in an amount no more than is reasonably sufficient to pay bank charges relating to the trust account; and

(B)      A lawyer may deposit the lawyer's own funds into trust to replenish a shortage in the lawyer's trust account.  Any deposits by the lawyer to cover trust account shortages must be no more than the amount of the trust account shortage, but may be less than the amount of the shortage.  The lawyer must notify the bar's lawyer regulation department immediately of the shortage in the lawyer's trust account, the cause of the shortage, and the amount of the replenishment of the trust account by the lawyer.

(2) *Compliance ~~With~~with Client Directives*.  Trust funds may be separately held and maintained other than in a bank or savings and loan association account if the lawyer receives written permission from the client to do so and provided that written permission is received before maintaining the funds other than in a separate account.

(3) *Safe Deposit Boxes*.  If a ~~member of the bar~~lawyer uses a safe deposit box to store trust funds or property, the ~~member~~lawyer ~~shall~~must advise the institution in which the deposit box is located that it may include property of clients or third persons.

(b) **Application of Trust Funds or Property to Specific Purpose.**  [no change]

(c) **Liens Permitted.**  [no change]

**(d) Controversies as to Amount of Fees.**  [no change]

**(e) Notice of Receipt of Trust Funds; Delivery; Accounting.**  [no change]

**(f) Disputed Ownership of Trust Funds.**  [no change]

**(g)        Interest on Trust Accounts (IOTA) Program.**

 (1)  *Definitions.*  As used ~~herein~~in this rule, the term:

(A)      [no change]

(B)      [no change]

(C)      [no change]

(D)      "Eligible Institution" means any bank or savings and loan association authorized by federal or state laws to do business in Florida and insured by the ~~Federal Savings and Loan Insurance Corporation~~Federal Deposit Insurance Corporation, or any successor insurance corporation(s) established by federal or state laws, or any open-end investment company registered with the Securities and Exchange Commission and authorized by federal or state laws to do business in Florida, all of which must meet the requirements set out in subdivision (5), below.

(E)      [no change]

**(h) Interest on Funds That Are Not Nominal or Short-Term.**  [no change]

**(i) Unidentifiable Trust Fund Accumulations and Trust Funds Held for Missing Owners.**  [no change]

**(j) Disbursement ~~Against~~against Uncollected Funds.**  [no change]

**(k) Overdraft Protection Prohibited.**  [no change]

### COMMENT

[no change]

**RULE 5-1.2          TRUST ACCOUNTING RECORDS AND PROCEDURES**

(a)   (c)      **[No Change]**

(d)   **Minimum Trust Accounting Procedures.**  The minimum trust accounting procedures that must be followed by all members of The Florida Bar (when a choice of laws analysis indicates that the laws of Florida apply) who receive or disburse trust money or property are as follows:

(1)      The lawyer is required to make monthly:

(A)      [No Change]

(B)      a comparison between the total of the reconciled balances of all trust accounts and the total of the trust ledger cards or pages, together with specific descriptions of any differences between the 2 totals and reasons for these differences.

(2) – (5)      [No Change]

(e)   **[No Change]**

(f)   **Record Retention.**  A lawyer or law firm that receives and disburses client or third-party funds or property must maintain the records required by this chapter for 6 years subsequent to the final conclusion of each representation in which the trust funds or property were received.

(1)      On dissolution of a law firm or of any legal professional corporation, the partners shall make reasonable arrangements for the maintenance and retention of client trust account records specified in this rule.

(2)      On the sale of a law practice, the seller must make reasonable arrangements for the maintenance and retention of trust account records specified in this rule consistent with other requirements regarding the sale of a law firm set forth in Chapter 4 of these rules.

(g)   **Audits.**  Any of the following are cause for The Florida Bar to order an audit of a trust account:

(1) – (7)      [No Change]

(8)     ~~up~~on court order; or

(9)     ~~up~~on entry of an order of disbarment, on consent or otherwise.

**(h) – (i)     [No Change]**


**RULE 6-12.3     REQUIREMENT**

(a)  **Course Components.**  Compliance with BSCR ~~shall~~ include~~s~~:

(1)     ~~in-person attendance at a 1-day~~completion of a Practicing with Professionalism program sponsored by the YLD; and

(2)     [No Change]

(b)  **Time for Completion.**  BSCR ~~shall~~must be completed as follows:

(1)     the Practicing with Professionalism program ~~shall~~must be completed no sooner than 12 months prior to or no later than 12 months following admission to The Florida Bar; and

(2)     the 3 elective, basic, substantive continuing legal education programs ~~shall~~must be completed during the member's initial 3-year continuing legal education requirement reporting cycle assigned ~~up~~on admission to The Florida Bar.


**RULE 10-7.2     PROCEEDINGS FOR INDIRECT CRIMINAL CONTEMPT**

(a)  **Petitions for Indirect Criminal Contempt.**  Nothing within these rules prohibits or limits the right of the court to issue a permanent injunction in lieu of or in addition to any punishment imposed for an indirect criminal contempt.

(1)     [No Change]

(2)     The respondent, personally or by counsel, may move to dismiss the order to show cause, move for a statement of particulars, or answer ~~such~~the

order by way of explanation or defense.  All motions and the answer must be in writing.  A respondent's omission to file motions or answer will not be deemed an admission of guilt of the contempt charged.

**(b)  Indigency of Respondent**.  Any respondent who is determined to be indigent by the referee is entitled to the appointment of counsel.

(1)    [No Change]

(2)    *Determination.*  After reviewing the affidavit and questioning the respondent, the referee ~~must make one of the following determinations:~~will determine whether the respondent is indigent or the respondent is not indigent.

In making this determination, the referee must consider the applicable statutory criteria used by the clerk of court when determining indigent status and the applicable statutory factors considered by a court when reviewing that determination.

**(c)  Proceedings Before the Referee.**  Proceedings before the referee must be in accordance with the following:

(1) – (2)    [No Change]

(3)    The respondent will be arraigned and enter a plea at the time of the hearing before the referee, or prior ~~upon~~ request.  A subsequent hearing to determine the guilt or innocence of the respondent will follow a plea of not guilty.  The date and time of the subsequent hearing will be set at the arraignment.  The respondent is entitled to be represented by counsel, have compulsory process for the attendance of witnesses, and confront witnesses against the respondent.  The respondent may testify in the respondent's own defense.  No respondent may be compelled to testify.  A presumption of innocence will be accorded the respondent.  The Florida Bar~~, which will act~~acting as prosecuting authority~~,~~ must prove guilt of the respondent beyond a reasonable doubt.

(4)    Subpoenas for the attendance of witnesses and the production of documentary evidence will be issued in the name of the court by the referee upon request of a party.  Failure or refusal to comply with any subpoena is a contempt of court and may be punished by the court or by any circuit court where the action is pending or where the contemnor may be found, as if ~~said~~the refusal were a contempt of that court.

(5)     [No Change]

(6)     At the conclusion of the hearing, the referee will sign and enter of record a judgment of guilty or not guilty.  There should be included in a judgment of guilty a recital of the facts constituting the contempt of which the respondent has been found and adjudicated guilty, and the costs of prosecution, including investigative costs and restitution, if any, will be included and entered in the judgment rendered against the respondent.  The amount of restitution must be specifically set forth in the judgment and must not exceed the amount paid to respondent by complainant(s).  The judgment must also state the name of the complainant(s) to whom restitution is to be made, the amount of restitution to be made, and the date by which it shallmust be completed.  The referee has discretion over the timing of payments, over how those payments are to be distributed to multiple complainant(s), and whether restitution will bear interest at the legal rate provided for judgments in this state.  In determining the amount of restitution to be paid to complainant(s), the referee will consider any documentary evidence that shows the amount paid to respondent by complainant(s), including cancelled checks, credit card receipts, receipts from respondent, and any other documentation evidencing the amount of payment.  Nothing in this section precludes an individual from seeking redress through civil proceedings to recover fees or other damages.

(7)     Prior to the pronouncement of a recommended sentence upon a judgment of guilty, the referee will inform the respondent of the accusation and judgment and afford the opportunity to present evidence of mitigating circumstances.  The recommended sentence will be pronounced in open court and in the presence of the respondent.

**(d)     Record.**

(1)     *Contents.*  The record must includes all items properly filed in the cause including pleadings, recorded testimony, if transcribed, exhibits in evidence, and the report of the referee.

(2)     [No Change]

(3)     *Supplementing or Removing Items from the Record.*  The respondent and The Florida Bar may seek to supplement the record or have items removed from the record by filing a motion with the referee for suchthat purpose, provided suchthe motion is filed within 15 days of the service of the index.  Denial

of a motion to supplement the record or to remove an item from the record may be reviewed in the same manner as provided for in the rule on appellate review under these rules.

(e) **Review by the Supreme Court of Florida.** The judgment and recommended sentence, ~~upon~~ a finding of "guilty," together with the entire record of proceedings must be forwarded to the Supreme Court of Florida for approval, modification, or rejection based upon the law. The petitioner or the respondent may file objections, together with a supporting brief or memorandum of law, to the referee's judgment and recommended sentence within 30 days of the date of filing with the court of the referee's judgment, recommended sentence, and record of proceedings, or in the case where a party seeks review of a referee's denial to supplement or remove an item from the record, within 30 days after the court issues its ruling on that matter. Denial of a motion to supplement the record or to remove an item from the record may be reviewed in the same manner as provided for in the rule on appellate review under these rules.

~~The Florida Bar may file a responsive brief or memorandum of law within 20 days after service of respondent's brief or memorandum of law. The respondent may file a reply brief or memorandum of law within 20 days after service of The Florida Bar's responsive brief or memorandum of law.~~A responsive brief or memorandum of law may be filed within 20 days after service of the initial brief or memorandum of law. A reply brief or memorandum of law may be filed within 20 days after service of the responsive brief or memorandum of law.

(f) – (g) **[No Change]**