PER CURIAM.
This disciplinary proceeding is before us on complaint of The Florida Bar.[1] Respondent petitions for review of the report of the referee, arguing that the referee’s conclusions are not supported by the facts. The Bar seeks review of the referee’s assessment of certain costs against the Bar.
The record reflects that Donald Guiking, a sophisticated businessman from Holland, first met respondent in 1978. The respondent represented Guiking and his wholly owned corporations Euro-Holland Vast-goed, B.V. and Viscaya, S.A. in a real estate transaction in Martin County. Viscaya purchased the property which was paid for by money and the assumption of a first and second mortgage. The title to the land was immediately transferred to Euro-Holland which assumed the first and second mortgages and itself gave a purchase money third mortgage to Viscaya for the difference between the balance of the first and second mortgages and the purchase price. The respondent also represented Guiking individually in the purchase and sale of Guiking’s personal residence.
Because of the termination of the business relationship between Guiking and a Dutch investment group represented by respondent, the respondent testified that he informed Guiking in September of 1980 that he would no longer be able to serve as Guiking’s attorney.
In January 1981 Guiking unsuccessfully attempted to secure a short-term loan from several individuals in Dade County for a Caribbean gambling venture. Guiking then approached the respondent to help him locate a private lender. Respondent *1277 arranged a six-day loan for Guiking utilizing the funds of another client; Guiking pledged the Viscaya mortgages, worth over $200,000, as security for the loan. Guiking gave respondent power of attorney to record the assignment of these mortgages in the event Guiking defaulted on the loan.
The amount of the loan is the initial source of the Bar’s complaint. On January 13 Guiking executed a promissory note for $6,500, but received a check drawn on respondent’s trust account for $6,000. Respondent testified that Guiking was in immediate need of cash so he gave him $500 in cash from his own separate funds in addition to the $6,000 of his lending-client’s funds, and that, although there were enough funds in his trust account to reimburse himself for the advanced $500, he did not do so. Respondent testified that he arranged this six-day interest-free loan merely as an accommodation to Guiking. Guiking testified that he received only the check for $6,000 and that he signed the promissory note for $6,500 because respondent had explained that the extra $500 was for interest.
When Guiking was unable to repay the loan on January 19 he requested an extension. Respondent informed Guiking that the lender was unwilling to extend the due date any longer than noon, January 20. When Guiking then failed to perform, respondent informed Guiking that the assignment of the Viscaya mortgages had been filed. During a telephone conversation on January 26, Guiking offered the respondent an additional $500 for reassignment of the mortgages. This offer was rejected by respondent during a phone conversation on January 28. Respondent wrote Guiking a letter on January 29 reaffirming that the lender-client would not accept the extra $500 and advised Guiking that it would now take $25,000, to be paid to respondent as trustee, in order for Guiking to reacquire the mortgages. The original loan for $6,000, with $6,500 to be repaid in six days, coupled with the January 29 demand for $25,000, forms the basis of the Bar’s complaint.
The referee found that the principle amount of the loan was $6,000 and that the remaining $500 was an assessment of usurious interest, and that the respondent, acting as an attorney for Guiking and the lender-client, permitted himself to be a participant in a scheme or plan whereby a patently usurious, and perhaps criminal, loan of money was arranged. The referee found that the respondent allowed himself to be placed in a position of conflicting interest between clients, and instead of expeditiously withdrawing from further representation of either client, respondent had actively represented the lender-client to the detriment of the borrower-client. The referee found that respondent knew or should have known the demand for $25,000 communicated by respondent to Guiking following Guiking’s default, was patently improper and probably illegal, but nonetheless, respondent let himself be utilized for such improper activity.
In the original complaint against respondent, the Bar alleged that the facts in this case constituted violations of Disciplinary Rules 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 1-102(A)(6) (a lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law) of the Code of Professional Responsibility and article XI, Rules 11.02(2) (violation of the Code of Professional Responsibility is a cause for discipline) and 11.02(3)(a) (commission by a lawyer of any act contrary to honesty, justice or good morals) of the Integration Rule of The Florida Bar.
The referee’s findings that the original loan to Guiking was for only $6,000 was established by clear and convincing evidence. It was not, as respondent suggests, only the word of Guiking against the word of the respondent. Testimony of other individuals concerning the amount that Guik-ing attempted to borrow before approaching respondent also supports the referee’s conclusion.
It is not necessary in upholding the referee’s conclusions to find,. as respondent argues, that the demand for $25,000 was “usurious.” Respondent’s attempt to lead *1278 Guiking to believe he would forfeit the Viscaya mortgages if he did not pay the $25,000 was clearly misleading. At the least, this conduct violated DR 7-102(A)(5) which states:
(A) In his representation of a client, a lawyer shall not (5) Knowingly make a false statement of law or fact.
We approve the referee’s findings that respondent violated the provisions of the Integration Rule and the Code of Professional Responsibility alleged by the Bar, as they are supported by competent substantial evidence.
Based on his view that respondent was acting as Guiking’s attorney, the referee found violations of Canon 5 (a lawyer should exercise independent professional judgment on behalf of a client), Canon 7 (a lawyer should represent a client zealously within the bounds of the law) and Canon 9 (a lawyer should avoid even the appearance of professional impropriety). While it is not necessary to show an attorney-client relationship in order to be guilty of violating the disciplinary rules, The Florida Bar v. Davis, 373 So.2d 683 (Fla.1979), here the Bar neither alleged nor attempted to prove an attorney-client relationship. We therefore disapprove these findings of the referee as they are predicated on the existence of an attorney-client relationship between respondent and Guiking.
In summation, we find that the respondent is guilty of violating Florida Bar Code of Professional Responsibility, Disciplinary Rules 1-102(A)(1), (2), (4) and (6), 7-102(A)(5), (7), and (8), and article XI, Rules 11.02(2) and 11.02(3)(a) of the Integration Rule of The Florida Bar.
Respondent alleges that the referee’s fourteen-month delay in issuing his report grievously prejudiced the respondent. While we do not condone unexplained delays in the filing of a referee’s report, the respondent here has failed to demonstrate any discernible prejudice resulting from this delay. Without such a showing, we do not feel the delay warrants finding the report invalid. See The Florida Bar v. Abrams, 402 So.2d 1150, 1152 (Fla.1981).
The final question presented here involves the referee charging the Bar for the cost of a transcript of the grievance committee hearing. This would have been appropriate had the respondent been exonerated of the charges. That was not the case here and we adhere to the general rule that an attorney found guilty of charges brought by the Bar will have the cost assessed against him. See The Florida Bar v. Davis, 419 So.2d 325, 328 (Fla.1982). We hold that the $861 assessed against the Bar by the referee should be taxed to the respondent.
The referee recommended that respondent be suspended from the practice of law for a period of six months, that he take and complete a course in professional responsibility from an accredited law school prior to his reinstatement to The Florida Bar, and that he be required to cooperate in obtaining the return of the Viscaya mortgages to the rightful owners.
It is the judgment of this Court that respondent be suspended from the practice of law for a period of three months, thus requiring no proof of rehabilitation. The suspension shall become effective thirty days from the filing of this opinion. We chose not to adopt the referee’s recommended discipline, as we feel it was based, at least in part, on his finding of an attorney-client relationship between respondent and Guiking. The referee’s recommendation that respondent cooperate in obtaining the return of the Viscaya mortgages is vague and is not an appropriate discipline and is therefore not adopted by us. We do adopt the referee’s recommendation that respondent complete a course in professional responsibility prior to reinstatement. Judgment for costs in the amount of $2,298.85 is entered against respondent, for which sum let execution issue.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, MCDONALD, EHRLICH and SHAW, JJ., concur.

. We have jurisdiction. Art. V, § 15, Fla. Const.