# Supreme Court of Florida

_____

No. SC14-100
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**JEREMY W. ALTERS,**
Respondent.

November 21, 2018

PER CURIAM.

We have for review a referee's report recommending that Respondent, Jeremy W. Alters, be found guilty of professional misconduct and not disciplined. We have jurisdiction. *See* art. V, § 15, Fla. Const. As discussed below, after having considered the referee's report, the record in this case, the parties' briefs, and oral arguments, we approve in part the referee's findings of fact. However, we additionally find that Alters engaged in dishonest and deceitful conduct by using one client's funds to pay obligations owed to another client. Therefore, we approve in part and disapprove in part the referee's recommendations as to guilt, and find Alters guilty of two additional rule violations. We also approve the

referee's findings in aggravation, and approve in part the findings in mitigation. However, we find that two of the referee's findings in mitigation are unsupported by the record, and disapprove those findings. Last, we disapprove the referee's recommendations as to discipline and costs. We instead disbar Alters and award The Florida Bar its costs, as set forth below. We also direct that no further proceedings in this case shall be held before Circuit Judge Marcia B. Caballero as referee.

## BACKGROUND

On December 22, 2011, The Florida Bar (Bar) filed with the Court a Petition for Emergency Suspension alleging that, under Alters' supervision, his law firm made improper transfers from its trust account to its operating account. The Bar alleged that forty-nine such transfers occurred, totaling approximately $2,051,474.32, between September 2009 and December 2010. The Court approved the Bar's Petition for Emergency Suspension and suspended Alters from the practice of law on December 28, 2011. *See Fla. Bar v. Alters*, 79 So. 3d 745 (Fla. 2011) (table). Alters filed a Motion for Dissolution and, following a hearing before a referee, the referee filed with the Court her report finding that there was no basis to conclude that Alters had made or authorized the improper transfers, and that no clients had been injured by the improper transfers. She recommended that Alters be reinstated to the practice of law. The Court approved the referee's

- 2 -

findings and recommendation and reinstated Alters to the practice of law on January 25, 2012. *See Fla. Bar v. Alters*, 81 So. 3d 416 (Fla. 2012) (table).

Thereafter, on January 22, 2014, the Bar filed its complaint in this case alleging that, based on the same misconduct alleged in the Petition for Emergency Suspension, Alters had violated six Rules Regulating the Florida Bar (Bar Rules): rules 3-4.3 (Misconduct and Minor Misconduct); 4-1.15 (Safekeeping Property); 4-8.1(a) (a lawyer in connection with a disciplinary matter shall not knowingly make a false statement of material fact); 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); 5-1.1(a) (Nature of Money or Property Entrusted to Attorney); and 5-1.1(b) (Application of Trust Funds or Property to Specific Purpose). The complaint did not allege any misconduct occurring subsequent to Alters' January 25, 2012, reinstatement to the practice of law. The matter was referred to the same referee that considered the Petition for Emergency Suspension, and the referee filed her report with the Court.

The referee made the following limited findings of fact in this case. Numerous improper transfers from Alters' firm's trust account to its operating account were made beginning in September 2009. Alters first became aware of these transfers on February 9, 2010. Although Alters eventually learned that there were other improper transfers made, he did not become aware of those until December 2010. He did not report the improper transfers to the Bar or to his

partners at the firm, and failed to implement any safeguards to prevent further improper transfers from occurring. Additionally, Alters failed to put into place measures to ensure compliance with the rules governing trust account management.

Alters and a former partner in the firm, who was the firm's managing partner when some of the improper transfers from the trust account occurred, were investigated by the Bar and subject to disciplinary proceedings for this trust account misconduct. However, despite the fact that Alters' former partner was charged with the same misconduct, the Bar cooperated with her and she was permitted to enter into a consent judgment. The former managing partner then provided testimony in this matter against Alters, which the referee found not to be credible. Nevertheless, Alters demonstrated a cooperative attitude throughout his own disciplinary proceedings.

The referee found that, of the twenty-four witnesses called at the disciplinary hearings, only the former comptroller of the firm testified that Alters made, or ordered, the improper transfers; however, the referee found the comptroller's testimony not credible. The comptroller admitted to meticulously altering bank documents to obscure the improper transfers and to "pushing the button" on each improper transfer that was made, though he contended that each transfer was made at Alters' direction. The comptroller provided text messages that he allegedly

backed up from his phone to prove that Alters directed him to make the improper transfers. However, the referee concluded that the text messages, which were heavily relied upon by the Bar's auditor in making his report to the Bar and testimony before the referee, were unreliable as a result of the manner in which the comptroller saved them. Further, the referee found that it is undisputed that each of the transfers was made by the comptroller, despite that another witness testified at the final hearing that the firm's former managing partner admitted to having authorized the initial transfers.

Based on these scant findings, the referee recommends that Alters only be found guilty of having violated Bar Rules 4-1.15 (Safekeeping Property) and 5-1.1(b) (Application of Trust Funds or Property to Specific Purpose). The referee recommends that Alters be found not guilty of the four other alleged rule violations. Below we discuss only the two not guilty recommendations challenged by the Bar.

The referee recommends that Alters be found not to have violated Bar Rule 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) because she found no evidence that Alters engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. The referee explained that she so found because there was no evidence that Alters created, or

directed anyone to create, any false documentation in connection with these proceedings.

The referee also recommends that Alters be found not to have violated Bar Rule 5-1.1(a) (Nature of Money or Property Entrusted to Attorney) for having failed to self-report the improper trust account transfers to the Bar. She also found that Alters' attempt to replenish the trust account with his own funds did not amount to impermissible commingling in violation of Bar Rule 5-1.1(a) in light of a subsequent version of the rule.[1] The referee explains in her report that Alters' actions would have been encouraged under the amendment to the rule, and thus it would be "inequitable" to find him guilty of having violated the rule.

In determining the recommended sanction, the referee considered Alters' personal history, prior discipline, and the existence of aggravating and mitigating factors pursuant to the Florida Standards for Imposing Lawyer Sanctions (Standards). The referee found two aggravating factors in this case: Standards (1) 9.22(d) (multiple offenses); and (2) 9.22(i) (substantial experience in the

---

1. In *In re Amendments to Rules Regulating the Florida Bar (Biennial Petition)*, 167 So. 3d 412 (Fla. 2015), the Court amended Bar Rule 5-1.1(a) to add subdivision (1)(B). That subdivision provides that "[a] lawyer may deposit the lawyer's own funds into trust to replenish a shortage in the lawyer's trust account," that such replenishments must be no more than any trust account shortage, and that the shortage and replenishment must be reported to the Bar immediately. 167 So. 3d at 439.

practice of law).  She found ten mitigating factors:  Standards (1) 9.32(a) (absence of a prior disciplinary record); (2) 9.32(b) (absence of a dishonest or selfish motive); (3) 9.32(c) (personal or emotional problems); (4) 9.32(d) (timely good faith effort to make restitution or to rectify consequences of his misconduct); (5) 9.32(e) (full and free disclosure to disciplinary board or cooperative attitude toward proceedings); (6) 9.32(g) (character or reputation); (7) 9.32(h) (physical or mental disability or impairment); (8) 9.32(i) (unreasonable delay in disciplinary proceedings provided that the respondent did not substantially contribute to the delay and provided further that the respondent has demonstrated specific prejudice resulting from that delay); (9) 9.32(k) (imposition of other penalties or sanctions); and (10) 9.32(l) (remorse).

Based on her findings of fact, recommendations as to guilt, and findings in aggravation and mitigation, the referee recommends that Alters not be further sanctioned.  The referee explains that her recommendation is made in light of the

> manner in which this case was prosecuted in the media even before the complaint was filed . . . ; the length of time it took to bring the complaint formally against [Alters] . . . ; the impact that this bar complaint has had on his legal standing and reputation; and the disproportionate treatment in the handling of the bar complaint against [Alters' former managing partner] and [Alters].

Report of Referee at 67-68.  The referee suggests that, while the two rule violations that she recommends Alters be found to have committed may warrant a public reprimand or suspension, Alters "has already been subjected to a 5 year

involuntary suspension,"[2] and suffered the effects of a public reprimand through negative media attention received as a result of the Bar's apparent violation of its own confidentiality rules.[3]

Because the referee found that the Bar proved only two of the six alleged Bar Rule violations, she recommends that Alters be assessed the Bar's administrative costs in the amount of $1250, and that the Bar be assessed Alters' costs for his defense against the charges concerning his authorization and knowledge of the improper transfers, in the amount of $143,913.35.

Shortly after oral argument was held in this case, the Court issued an order on its own motion suspending Alters from the practice of law until further order of the Court. *See Fla. Bar v. Alters*, No. SC14-100, 2018 WL 2304233 (Fla. May 21, 2018).

---

2. It is not clear why the referee found that Alters had been involuntarily suspended for five years. He was suspended in *Florida Bar v. Alters*, 79 So. 3d 745 (Fla. 2011) (table), from December 28, 2011, to January 25, 2012. However, he was not suspended in this case until May 21, 2018. *See Fla. Bar v. Alters*, No. SC14-100, 2018 WL 2304233 (Fla. May 21, 2018).

3. After the Bar inquiry was filed against Alters in September 2011, the Bar confirmed to *Daily Business Review* that Alters was being investigated for possible trust account misappropriation. *Daily Business Review* published several stories that Alters claims cost him a lead counsel position and over $30,000,000 in fees. Alters moved to dismiss the charges against him due to the alleged breach of confidentiality by the Bar; his motion was denied by the referee.

The Bar has now filed a notice of intent to seek review of the report of referee, challenging an evidentiary ruling of the referee, the referee's findings of fact and recommendations as to guilt, findings in aggravation and mitigation, recommended sanction, and recommended imposition of costs. Ultimately, the Bar asks the Court to disbar Alters and award its costs incurred in connection with the case. We address each of these in turn below.

## ANALYSIS

Referee's Exclusion of Evidence

The Bar argues that the referee erred by excluding evidence regarding Alters' tax status with the Internal Revenue Service (IRS). The record demonstrates that much of Alters' defense in this case centered on his efforts subsequent to February 9, 2010, to keep the firm operational and replenish the firm's trust account. Part of his efforts involved securing a co-counsel agreement with Searcy Denney Scarola Barnhart and Shipley, P.A. (the Searcy firm). Through discovery the Bar learned that, in securing the co-counsel agreement, Alters affirmatively misrepresented his personal tax status to the Searcy firm. Alters represented to the Searcy firm that he had no outstanding tax obligations, when he owed substantial sums in unpaid taxes to the IRS at the time. The Bar sought to introduce evidence of Alters' misrepresentation, arguing that it was material because Alters' character trait of dishonesty was at issue since he was

charged with having violated Bar Rule 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). The Bar argued that Alters' dishonest behavior in obtaining financial assistance from outside sources allowed him to keep the firm operational.

Alters filed a motion to exclude the evidence and, at a hearing on the motion, argued that the evidence was irrelevant and constituted inadmissible character evidence. The referee concluded that Alters' personal tax status was irrelevant to the allegations in the Bar's complaint. Accordingly, she prohibited the Bar from making any reference to Alters' personal tax status at the final hearing.

The Court reviews referees' actions regarding the admissibility of evidence in Bar discipline cases for an abuse of discretion. *See Fla. Bar v. Hollander*, 607 So. 2d 412, 414 (Fla. 1992); *Fla. Bar v. Rendina*, 583 So. 2d 314, 315 (Fla. 1991). Additionally, because "bar disciplinary proceedings are quasi-judicial rather than civil or criminal, the referee is not bound by technical rules of evidence." *Fla. Bar v. Rotstein*, 835 So. 2d 241, 244 (Fla. 2002) (quoting *Rendina*, 583 So. 2d at 315); *see Fla. Bar v. Tobkin*, 944 So. 2d 219, 224 (Fla. 2006).

We find that the referee abused her discretion by excluding evidence relating to Alters' personal tax status because such evidence was relevant to the allegations in the Bar's complaint. The Bar's complaint clearly alleged that Alters

- 10 -

misappropriated trust account funds, falsely certified trust account compliance to the Bar, and violated Bar Rule 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). Dishonesty, fraud, deceit, and misrepresentation are each alternative essential elements of a violation of Bar Rule 4-8.4(c). Part of Alters' defense in this case involved his attempts to obtain financial assistance for his firm shortly after having discovered the improper transfers from the trust account. Just as Alters' attempts to stabilize the firm's financial situation in the midst of the improper transfers is relevant to these proceedings, so is evidence of Alters' misrepresentations regarding his tax liability made in the course of those attempts. Accordingly, we find that the referee abused her discretion in excluding the evidence.

Findings of Fact and Rule Violations

The Bar next challenges the referee's recommendations that Alters be found not guilty of having violated Bar Rules 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 5-1.1(a) (Nature of Money or Property Entrusted to Attorney), and her failure to make factual findings to support those violations despite there being unrefuted evidence thereof in the record. To the extent that the Bar challenges the referee's findings of fact, this Court's review of such matters is limited, and if a referee's findings of fact are supported by competent, substantial evidence in the record, this Court will

not reweigh the evidence and substitute its judgment for that of the referee. *Fla. Bar v. Frederick*, 756 So. 2d 79, 86 (Fla. 2000); *see Fla. Bar v. Jordan*, 705 So. 2d 1387, 1390 (Fla. 1998). However, where a referee's failure to make a particular factual finding is clearly erroneous in light of the evidence before her, this Court can make such a finding. *See, e.g.*, *Fla. Bar v. Sweeney*, 730 So. 2d 1269, 1271 (Fla. 1998) ("[W]e find that the referee's factual finding that the Bar failed to prove an intent to defraud is clearly erroneous.").

Moreover, to the extent the Bar challenges the referee's recommendations as to guilt, this Court has repeatedly stated that the referee's factual findings must be sufficient under the applicable rules to support the recommendations regarding guilt. *See Fla. Bar v. Shoureas*, 913 So. 2d 554, 557-58 (Fla. 2005); *Fla. Bar v. Spear*, 887 So. 2d 1242, 1245 (Fla. 2004). The party challenging the referee's findings of fact and recommendations as to guilt has the burden to demonstrate that the record is devoid of evidence supporting, or clearly contradicts, the recommendations. *Fla. Bar v. Germain*, 957 So. 2d 613, 620 (Fla. 2007); *Fla. Bar v. Spann*, 682 So. 2d 1070, 1073 (Fla. 1996).

Before addressing the referee's challenged recommendations as to guilt, we note that the referee's report in this case is inadequate. We do not question that the referee put significant time and effort into preparing the report, particularly in summarizing the testimony of each of the witnesses at the final hearing. However,

the referee has drawn only the most basic conclusions from the summarized testimony, and oftentimes has failed to make any findings regarding undisputed evidence in the case. This fails to comply with the basic requirements for the contents of the referee's report contained in the Rules Regulating the Florida Bar. *See* R. Regulating Fla. Bar 3-7.6(m)(1)(A) (stating that a referee's report shall include "a finding of fact as to each item of misconduct of which the respondent is charged"). In all, the referee's findings of fact span less than four pages of the 71-page, mostly single-spaced report. It is inconceivable that the facts of such a complicated case, which has taken years to litigate and the record of which spans thousands of pages, could be reduced to four pages. Thus, we find the referee's findings of fact to be incomplete.

Turning to the referee's findings and recommendations in this case, the record clearly supports a finding that Alters violated Bar Rule 4-8.4(c), and the referee's recommendation to the contrary is unsupported.[4] The record evidence demonstrates that Alters engaged in dishonest and deceitful conduct in violation of Bar Rule 4-8.4(c) by using one client's funds to pay obligations owed to another

---

4. Without further discussion, we approve the referee's undisputed recommendations that Alters be found to have violated Bar Rules 4-1.15 (Safekeeping Property) and 5-1.1(b) (Application of Trust Funds or Property to Specific Purpose), and that he be found not to have violated Bar Rules 3-4.3 (Misconduct and Minor Misconduct) and 4-8.1(a) (a lawyer in connection with a disciplinary matter shall not knowingly make a false statement of material fact).

- 13 -

client and failing to implement reasonable remedial measures once he was on notice of the trust account shortages. The referee's recommendation to the contrary because she found that Alters did not create, or direct anyone to create, false documents in connection with this proceeding is erroneous because Bar Rule 4-8.4(c)'s application is not limited to creating false documents.

There is no question in this case that Alters' conduct in managing the trust account was negligent at best. There is unrefuted evidence that at least ten improper transfers from the firm's trust account were applied to cover operating account checks issued to Alters and deposited into his personal bank account, for which there would have been insufficient funds in the operating account without the improper transfers. Inexplicably, the referee made no findings regarding these transfers. The referee also failed to make any findings concerning the improper transfers that occurred between July and October 2010, when Alters' former managing partner was no longer with the firm and Alters himself was responsible for managing the trust account. Additionally, the referee failed to make findings concerning a December 2010 transaction where Alters used one client's funds, without that client's consent, to pay monies owed to another client. There is no dispute that Alters was the managing partner in charge of the trust account at the time of the December 2010 improper transfer, there is no evidence in the record rebutting the conclusion that only Alters could have issued the December 2010

- 14 -

check, and Alters does not deny having made the improper transfer. We find the referee's failure to make any findings in these regards to be clearly erroneous in light of the undisputed record evidence.

Although Alters argues that intent is required for a violation of Bar Rule 4-8.4(c), this Court's jurisprudence is clear that "[k]nowingly or negligently engaging in sloppy bookkeeping amounts to intent under rule 4-8.4(c)." *Fla. Bar v. Riggs*, 944 So. 2d 167, 171 (Fla. 2006) (suspending attorney for three years after he knowingly assigned his trust account responsibilities to his paralegal and then failed to manage her activities); *Fla. Bar v. Smith*, 866 So. 2d 41, 46 (Fla. 2004) (holding that "extraordinary sloppiness and negligence" satisfy the intent element for finding a violation of rule 4-8.4(c)); *Fla. Bar v. Fredericks*, 731 So. 2d 1249, 1252 (Fla. 1999) (holding that the determinative factor to prove a rule 4-8.4(c) violation was whether the attorney deliberately or knowingly engaged in the activity in question, rather than the motive behind the attorney's action).

As the person in charge of managing the trust account and authorizing the transfers, it was Alters' responsibility to know from where the funds were coming. *See generally Fla. Bar v. Rousso*, 117 So. 3d 756 (Fla. 2013). Alters admitted that he knew since February 9, 2010, of the existence of improper transfers in the trust account. Accordingly, regardless of whether Alters actually knew from which client the funds were taken, the record demonstrates that Alters knew or should

- 15 -

have known that there was a strong likelihood that client funds were being misappropriated. Having received funds from a client, it is an attorney's obligation to ensure that those funds are properly preserved and used only for the purposes intended by the client, and not for any other unauthorized purpose. *See* R. Regulating Fla. Bar 5-1.1(b); *Fla. Bar v. Miller*, 548 So. 2d 219, 220 (Fla. 1989).

Further, the referee specifically found that Alters failed to notify any other partners at the firm or the Bar after he discovered several of the improper transfers. While Alters attempts to blame his former managing partner and the firm's comptroller for the trust account deficit, the record demonstrates, and the referee's limited factual findings confirm, that he ultimately turned over responsibility to the former managing partner at a time he knew the firm was experiencing severe financial difficulties. He subsequently left her in charge of the trust account. Alters neither hired an outside consultant nor reported the trust account issues to the Bar, even after learning of the trust account shortages and being advised by counsel of measures the firm needed to implement to prevent future improper transfers. As a result of Alters' choices, and the knowledge he possessed at the time he made those choices, we find that he ultimately bears responsibility for the improper transfers and misappropriation of client funds. Accordingly, in light of the undisputed record evidence, we conclude that the referee erred in failing to find

that Alters misused client funds and we now so find. Thus, we find Alters guilty of having violated Bar Rule 4-8.4(c).

We also disapprove the referee's recommendation that Alters be found not to have violated Bar Rule 5-1.1(a) (Nature of Money or Property Entrusted to Attorney), and now find him guilty of having violated that rule. The referee recommends that Alters be found not to have violated Bar Rule 5-1.1(a) because the version of Bar Rule 5-1.1(a) in effect at the time of his misconduct did not require Alters to report the improper transfers from the trust account to the Bar. The referee further found that the funds Alters put into the trust account did not amount to commingling in violation of the rule because the rule was later amended to encourage attorneys to replenish trust account shortages with their own funds. We disagree that Alters' actions did not amount to impermissible commingling under the Bar Rules.

The rule as amended after Alters' misconduct is irrelevant. The rule to be applied is the rule in effect at the time of the alleged violations. *Fla. Bar v. Calvo*, 630 So. 2d 548, 550 (Fla. 1993). Accordingly, we conclude that the testimony, evidence, and the referee's findings all plainly demonstrate that Alters deposited personal funds and funds from loans and a co-counsel agreement into the firm's trust account in violation of the applicable version of Bar Rule 5-1.1(a). Such a conclusion is consistent with this Court's prior holdings. *See Rousso*, 117 So. 3d at

764 (finding attorneys guilty of having violated Bar Rule 5-1.1 for depositing their own money into their firm's trust account to cover account shortages resulting from an employee's theft of trust property, despite the referee's recommendation to the contrary finding that the attorneys' "sense of personal honor" to correct the shortages justified the commingling); *Fla. Bar v. Brownstein*, 953 So. 2d 502 (Fla. 2007) (finding attorney guilty of having violated Bar Rule 5-1.1(a) for depositing funds from his operating account into his trust account after he bounced several checks from his trust account); *Fla. Bar v. Cox*, 718 So. 2d 788 (Fla. 1998) (finding attorney guilty of having violated Bar Rule 5-1.1(a) for depositing funds he received from a business loan into his trust account).

Findings in Aggravation and Mitigation

Because we find that Alters is guilty of having violated Bar Rules 4-1.15, 4-8.4(c), 5-1.1(a), and 5-1.1(b), we turn now to discipline. "Like other factual findings, a referee's findings in mitigation and aggravation carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record." *Germain*, 957 So. 2d at 621. As discussed herein, we disapprove as unsupported two of the referee's findings in mitigation: (1) Standard 9.32(b) (absence of a dishonest or selfish motive); and (2) Standard 9.32(i) (unreasonable delay in disciplinary proceeding provided that the respondent did not substantially

contribute to the delay and provided further that the respondent has demonstrated specific prejudice resulting from that delay).[5]

First, we disapprove the referee's finding in mitigation of absence of a dishonest or selfish motive pursuant to Standard 9.32(b). Alters acknowledges that he knew of the existence of improper trust account transfers since February 9, 2010. The record demonstrates that Alters, despite knowing of the improper transfers, failed to actively manage the trust account or implement proper accounting procedures to ensure that client property held in trust was not improperly transferred to the firm's operating account. Instead, through the improper transfers, Alters replenished the firm's operating account and kept the firm afloat despite severe financial troubles. The record also demonstrates that during this time, and for a year after he became aware of the improper transfers, Alters also received substantial amounts of money from the firm and deposited it into his personal bank account—in the amount of over $1,000,000 from February 2010 to February 2011 alone.[6]

_____

5. Without further discussion we approve the referee's findings in aggravation as well as the remaining findings in mitigation.

6. The Bar's auditor testified at the final hearing before the referee that in addition to funds disbursed directly to Alters, he had improperly used trust funds to cover firm expenses and overdrafts, as well as for personal expenses such as Miami Heat tickets.

Although Alters allegedly did not know that trust funds were improperly flowing into his personal account, he remains responsible in light of his failure to take meaningful steps to address the trust account issues. Moreover, though Alters disputed signing the checks, the Bar's auditor testified at the final hearing before the referee that "the funds went into [Alters'] personal account. For this reason, [the Bar's auditor] interpreted all of the checks as legitimate checks [and] . . . under these circumstances [Alters] had derived a benefit from the improper transfers." Although the referee made no finding in this regard, the Court finds this unrefuted testimony persuasive. Alters' conduct clearly exhibits a selfish motive. *See, e.g.*, *Fla. Bar v. Tauler*, 775 So. 2d 944 (Fla. 2000) (approving referee's finding in aggravation of selfish motive when attorney issued checks from the firm's trust account to satisfy personal and business obligations, even though attorney replenished the trust account and disbursed the funds to the clients before the Bar initiated its investigation). We therefore disapprove the referee's finding in mitigation of an absence of a dishonest or selfish motive as clearly erroneous and without support in the record.

We also disapprove the referee's finding in mitigation of an unreasonable delay in the disciplinary proceeding pursuant to Standard 9.32(i). The record demonstrates that, in total, thirty-eight months of delay occurred as a result of the time the Bar took to file its complaint, the referee's development of the report, and

resolution of a petition for writ of certiorari filed with this Court by Alters' former managing partner.[7]  However, Standard 9.32(i) requires that, in addition to demonstrating that disciplinary proceedings were "unreasonabl[y] delay[ed]," a respondent must prove that he "did not substantially contribute to the delay and . . . has demonstrated specific prejudice resulting from that delay."  *See Fla. Bar v. Lehrman*, 485 So. 2d 1276, 1278 (Fla. 1986) ("[T]he respondent here has failed to demonstrate any discernible prejudice resulting from this delay.  Without such a showing, we do not feel the delay warrants finding the report invalid.").  Because the referee made no finding in this regard and our review of the record shows that Alters failed to demonstrate before the referee any specific prejudice he suffered resulting from the delay, we hereby find that Standard 9.32(i) does not apply in this case.  *See, e.g.*, *Fla. Bar v. Brakefield*, 679 So. 2d 766, 770 (Fla. 1996) (finding that attorney failed to present evidence of prejudice caused by any alleged delay in the disciplinary proceedings); *Lehrman*, 485 So. 2d at 1278.  Accordingly, we disapprove as unsupported and clearly erroneous the referee's finding in mitigation of unreasonable delay in Alters' disciplinary proceedings.

---

7.  The petition was filed with the Court in this case on April 15, 2015.  All parties agreed not to proceed pending the disposition of that petition.  The petition was denied on September 25, 2015.  *See Fla. Bar v. Alters*, No. SC14-100 (Fla. order issued Sept. 25, 2015).

<u>Sanction</u>

The Bar next challenges the referee's recommendation that Alters receive no discipline. In reviewing a referee's recommendation as to discipline, the Court's scope of review is broader than that afforded to the referee's findings of fact, because it is ultimately the Court's responsibility to determine the appropriate discipline. *Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989); *see* art. V, § 15, Fla. Const. However, the Court will generally not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. *Fla. Bar v. De La Torre*, 994 So. 2d 1032, 1036 (Fla. 2008).

We disapprove the referee's recommendation to not further discipline Alters as entirely without support in her findings, this Court's case law, the Standards, or the Bar Rules. In fact, the referee recommends that "no further sanctions are warranted" despite finding two substantial Bar Rule violations; inexplicably she fails to cite any authority supporting her recommendation. Considering the referee's recommendations as to guilt that we approve, the referee's findings in aggravation and mitigation that we approve, as well as our additional findings that Alters misappropriated client funds, violated Bar Rules 4-8.4(c) and 5-1.1(a), and that the mitigating factors in Standards 9.32(b) (absence of dishonest or selfish

motive) and 9.32(i) (unreasonable delay in the disciplinary proceedings) do not apply in this case, we conclude that Alters must be disbarred.

The Court has long held that the misuse of client funds "is one of the most serious offenses a lawyer can commit." *Fla. Bar v. Schiller*, 537 So. 2d 992, 993 (Fla. 1989) (citing *Fla. Bar v. Newman*, 513 So. 2d 656 (Fla. 1987), and *Fla. Bar v. Breed*, 378 So. 2d 783 (Fla. 1979)). Disbarment is the presumptively appropriate sanction, under both the Standards and existing case law, when a lawyer intentionally misappropriates trust funds. Fla. Stds. Imposing Law. Sancs. 4.11 ("Disbarment is appropriate when a lawyer intentionally or knowingly converts client property regardless of injury or potential injury."); *see Fla. Bar v. Valentine-Miller*, 974 So. 2d 333, 338 (Fla. 2008); *Brownstein*, 953 So. 2d at 511. Indeed, the overwhelming majority of cases involving the misuse of trust funds has resulted in disbarment, regardless of mitigation. *See Valentine-Miller*, 974 So. 2d at 338-39 (listing cases in which the Court "has disbarred attorneys who misappropriated funds or abandoned their clients, despite the referee's findings of substance abuse and rehabilitation, concluding that the mitigation was insufficient to overcome the seriousness of the misconduct"); *Fla. Bar v. Spear*, 887 So. 2d 1242, 1247 (Fla. 2004) (citing *Fla. Bar v. Massari*, 832 So. 2d 701, 706 (Fla. 2002)); *Fla. Bar v. Shanzer*, 572 So. 2d 1382, 1383 (Fla. 1991) (listing examples

of cases in which the Court disbarred attorneys for misappropriation of funds notwithstanding the mitigating evidence presented in those cases).

Alters urges this Court to approve the referee's recommendation that disbarment is inappropriate in this case and that he not be disciplined for his misconduct. Essentially, he argues for leniency in the face of the presumption of disbarment for misappropriation of client funds. To be sure, in limited instances a respondent may overcome the presumption; but only upon a showing of substantial mitigating circumstances that demonstrate that disbarment would be unfair and inappropriate in a particular case. However, these cases are exceptional and generally involve relatively isolated instances of misconduct made in the face of dire circumstances. *See, e.g.*, *Fla. Bar v. McFall*, 863 So. 2d 303 (Fla. 2003) (imposing a three-year suspension followed by a three-year probation for attorney who misappropriated a client's funds over a three-month period because he suffered impaired judgment due to medications and mental health); *Tauler*, 775 So. 2d 944 (imposing a three-year suspension followed by a one-year probation for attorney who misappropriated funds over a five-month period due to personal and emotional distress caused by her husband's severe health problems and personal bankruptcy). Such leniency is not warranted in a case involving an attorney's systemic failure to protect property held in trust for his clients.

Alters also argues that he did not have the intent requisite for the Court to disbar him for the improper trust account transfers. However, the Court has disbarred attorneys even for gross negligence in maintaining a trust account. For instance, in *Florida Bar v. Rousso* the Court disbarred two attorneys for gross negligence in maintaining their trust account. 117 So. 3d at 767. The attorneys in that case claimed that their nonlawyer bookkeeper embezzled more than $4,000,000 from the firm's trust account. *Id.* at 759-60. The referee in the case found no clear and convincing evidence that the attorneys intentionally misappropriated the money or received any direct benefit from the missing funds. *Id.* at 760. Nevertheless, on review the Court found that the attorneys engaged in several ethical violations, including failing to meet and maintain minimum trust accounting requirements, commingling personal and client funds, and creating a conflict of interest by borrowing money from a client to cover a portion of the trust account shortage. *Id.* at 761-62. The Court concluded that the attorneys had "abandoned their professional duty to safeguard their clients' funds." *Id.* at 767. Given their egregious misconduct, the Court held that disbarment was appropriate. *Id.*

Similarly, in *Florida Bar v. Johnson*, 132 So. 3d 32, 34-35 (Fla. 2013), the Court found that Johnson improperly delegated significant responsibilities with regard to his trust account to an inadequately supervised nonlawyer employee. The

employee stole money from Johnson's operating account and used funds from the trust account to cover up the theft, ultimately resulting in two client checks being returned for insufficient funds. *Id.* In light of the specific circumstances of the case, namely the referee's finding that Johnson's employee had, without Johnson's knowledge, stolen money from the firm, the Court found there to be insufficient evidence that Johnson intentionally misappropriated client money to support a violation of Bar Rule 4-8.4(c). *Id.* at 37. The Court grappled with whether Johnson's misappropriation of client trust funds called for a lengthy rehabilitative suspension or disbarment. *Id.* at 38-40. Ultimately, the Court held that his gross negligence—when considered together with other conduct, including holding himself out as an attorney in violation of the Court's order imposing an emergency suspension, which led to the filing of two contempt petitions—warranted disbarment. *Id.* at 40.

Considering *Rousso* and *Johnson*, Alters' Bar Rule violations, and the aggravating and mitigating factors, we conclude that Alters' actions warrant disbarment. After Alters discovered that client funds were misappropriated under his former partner's direction, he continued to leave that person in charge of the trust account without putting in place any safeguards to prevent further misappropriation. Further, client funds continued to be misappropriated under Alters' direction even after the former partner left the firm. Because this case is

not one in which an employee stole funds from an unwitting attorney, it involves more severe conduct than that at issue in *Johnson*. Unlike *Johnson*, there is no finding by the referee in this case that Alters' firm's trust funds were stolen without Alters' knowledge. To the contrary, improper transfers continued to occur even after Alters became aware of them. He could have stopped further improper transfers from occurring by taking active control of the trust account himself and putting in place procedures that would prevent further improper transfers; the record is clear that Alters chose to do neither, and that improper transfers continued to occur under his supervision. Like the attorneys in *Rousso*, Alters entirely abandoned his duty to protect client funds held in trust. This Court will not allow attorneys to abdicate their responsibility to protect clients' property and enjoy the privilege of practicing law. Therefore, Alters must be disbarred.

Costs

Last, the Bar challenges the referee's recommendation as to costs. The Court has the final discretionary authority to assess costs in Bar proceedings. *See Fla. Bar re Dunagan*, 775 So. 2d 959, 962 (Fla. 2000) (citing *Fla. Bar v. Lechtner*, 666 So. 2d 892, 894 (Fla. 1996)). The Court, as a matter of policy, may levy against a respondent the costs incurred by the Bar in prosecuting the misconduct he or she has committed. *Lechtner*, 666 So. 2d at 894; *see Fla. Bar v. Miele*, 605 So. 2d 866, 868 (Fla. 1992); *Fla. Bar v. Gold*, 526 So. 2d 51, 52 (Fla. 1988).

- 27 -

The referee in this case recommended that the Bar be awarded only its administrative costs of $1250, and that Alters be awarded his costs in the amount of $143,913.35, despite recommending that Alters be found guilty of having violated two Bar Rules. However, all costs sought by the Bar in this case are specifically allowed by Bar Rule 3-7.6(q), which states that the Bar may recover, among other costs, investigative costs, court reporter costs, witness costs, and an administrative fee. Further, Alters' extensive misconduct and failure to have complied with the trust accounting rules warranted the Bar's equally extensive computer forensics investigation, audit, witness depositions, and associated costs; ultimately these amount to $305,360.03. In light of the referee's recommendations as to guilt that we approve, and the additional rule violations that we find, we see no reason the Bar should be made to bear these costs. Accordingly, we find that the referee abused her discretion; we disapprove the referee's recommended award of costs, award the Bar its costs of $305,360.03, and award Alters nothing.

## CONCLUSION

We find that the referee abused her discretion by excluding relevant evidence regarding Alters' personal tax status with the IRS. The referee also erred in failing to find that Alters misused client funds. We approve the referee's recommendations that Alters be found guilty of having violated Bar Rules 4-1.15 (Safekeeping Property) and 5-1.1(b) (Application of Trust Funds or Property to

Specific Purpose). We also approve the referee's recommendations that Alters be found not to have violated Bar Rule 3-4.3 (Misconduct and Minor Misconduct) and 4-8.1(a) (a lawyer in connection with a disciplinary matter shall not knowingly make a false statement of material fact). However, because we now find that Alters misused client funds, we disapprove the referee's recommendation that Alters be found not to have violated Bar Rule 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). Moreover, we disapprove the referee's recommendation that Alters be found not to have violated Bar Rule 5-1.1(a) (Nature of Money or Property Entrusted to Attorney). Accordingly, we now find Alters guilty of having violated Bar Rules 4-8.4(c) and 5-1.1(a).

We approve the referee's findings in aggravation. However, we disapprove the findings in mitigation of absence of a dishonest or selfish motive pursuant to Standard 9.32(b) and unreasonable delay in the disciplinary proceedings pursuant to Standard 9.32(i), as they are unsupported by evidence in the record. We approve the referee's remaining findings in mitigation.

Based on these findings of fact as to guilt and in aggravation and mitigation, we disapprove the referee's recommendation that Alters not be disciplined. In light of the seriousness of his conduct, Respondent Jeremy W. Alters is hereby disbarred. Because Alters is currently suspended, the disbarment is effective

immediately. Alters shall fully comply with Rule Regulating the Florida Bar 3-5.1(h).

Finally, we disapprove the referee's recommendation as to costs. Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Jeremy W. Alters in the amount of $305,360.03, for which sum let execution issue.

No further proceedings that may be necessary in this case shall be held before Circuit Judge Marcia B. Caballero as referee.

It is so ordered.

CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and LAWSON, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS DISBARMENT.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Tallahassee, Florida, William Mulligan, Bar Counsel, Miami, Florida, and Adria E. Quintela, Staff Counsel, The Florida Bar, Sunrise, Florida,

for Complainant

Jamie Leigh Webner and Andrew Scott Berman of Young, Berman, Karpf & Gonzalez, P.A., Miami, Florida,

for Respondent